## HOME COAL COMPANY, Appellant, v. CITY OF MACON, Respondent.*

### In the Kansas City Court of Appeals, April 7, 1924.

1. **APPEAL AND ERROR: Referee: Findings: Referee's Findings of Fact Approved and Confirmed by Trial Court will not be Disturbed on Appeal, if Supported by Substantial Evidence.**  Findings of fact made by referee having been approved and confirmed by trial court, occupy same status upon appeal as verdict of a jury and will not be disturbed if supported by substantial evidence.

2. **PAYMENT: Involuntary: Rule as to Involuntary Payment for Electrical Service Stated.**  Where it is necessary to obtain electrical service in order to carry on a business and in order to receive future service therefor it is necessary that an excessive charge be paid, such payments are involuntary.

3. **———: ———: Under Facts Claim of Consumer That it Paid Excessive Charges Involuntarily Held not Established.**  Where plaintiff, a coal mining company, in order to obtain an improved service, solicited defendant municipality to construct a power line to one of its mines, and to enlarge city's power plant at a large outlay of money and agreed to pay an additional charge in order to get the service, payment of such charge *held* not to be involuntary payment.

4. **———: Payment of Excessive Charge for Electricity Held to Have Been Made under Mistake of Law and not Recoverable.**  Payments by consumer of electricity furnished by a municipality at an inceased rate, made in the belief that an ordinance had been passed by the city authorizing the excessive charge, *held* payment not under mistake of fact, but under mistake of law and not recoverable.

5. **———: Voluntary Payments of Excessive Rate Though Prohibited by Statute, Held not Recoverable by Consumer.**  Where consumer of electricity voluntarily pays rate therefor greater than that fixed

Home Coal Co. v. City of Macon.

by rates filed with Public Service Commission, under sections 10476-10494, Revised Statutes 1919, such payments could not be recovered back under sections 10477 and 10478, which prohibiting such excessive charges, do not provide for a penalty or for such a recovery.

6. ———: Excessive Payments Made for Electricity as Result of Over-reading Meter Held Recoverable as Paid under Mistake of Fact. Excessive payments made for electricity as a result of over-reading meter *held* recoverable as paid under a mistake of fact, whether the meter was read by agents of consumer or those of defendant.

7. ———: Electricity: Rates: Consumer Held not Required to Pay a greater Rate for Lights Merely Incidental to the Power Used. Where electricity used for lights was merely incidental to the power used, consumer was not required to pay a greater rate therefor than it paid for power electricity.

---

*Headnotes 1. Appeal and Error, 4 C. J., section 2865; 2. Payment, 30 Cyc., p. 1305; 3. Payment, 30 Cyc., p. 1305; 4. Payment, 30 Cyc., pp. 1313, 1315; 5. Payment, 30 Cyc., p. 1298; 6. Payment, 30 Cyc., pp. 1316, 1318; 7. Electricity, 20 C. J., section 29 Anno).

Appeal from Circuit Court of Macon County.—*Hon. Vernon L. Drain*, Judge.

REVERSED AND REMANDED.

*George N. Davis* for appellant.

*C. G. Buster* and *Ed. S. Jones* for respondent.

BLAND, J.—This is an action to recover the sum of $4201.51, alleged to be the amount of over-charge for electric current furnished by the defendant to plaintiff from August, 1918, to October, 1921. The case was referred to a referee who reported findings of fact and conclusions of law and recommended that judgment be entered in favor of the defendant. Plaintiff filed its exceptions to the referee's report, which was overruled. Judgment was rendered for the defendant, resulting in this appeal.

The findings of fact made by the referee having been approved and confirmed by the trial court occupy the same status upon appeal as the verdict of a jury and such findings will not be distributed if supported by substantial evidence. [Kline Suit Co. v. Morris, 293 Mo. 478, 494.] There is evidence in the record of the following facts: Plaintiff operated two coal mines as No. 1 and No. 2, the first being within the corporate limits of the City of Macon and the second near that city but outside of the corporate limits. The defendant city operated a municipal light plant in said city and furnished light and power to the inhabitants and industries thereof and to some industries outside the city limits, including mine No. 2 owned by plaintiff. Defendant had a schedule of rates graduated according to the amount of electricity used, the larger users paying less than the smaller. The rates for lighting were different and higher than the rates for power.

Some years prior to the time plaintiff claims the city began to exact from it charges higher than it was empowered to make, plaintiff operated mine No. 1 partially by electricity and obtained its current from the defendant and paid therefor four cents per kilowatt hour. This charge was fixed in 1912 by ordinance of the city fixing the schedule of rates, and filed with the Public Service Commission of the State. At no time, although the rates were afterwards increased to five cents per kilowatt hour for a short time, which plaintiff paid, and afterwards to six cents per kilowatt hour, was any further schedule filed with the Public Service Commission, and defendant could not legally charge a higher rate than four cents per kilowatt hour under the provisions of the laws of this State. [Art. 4, Chap. 95, R. S. 1919.] It is to recover the difference between four cents per kilowatt hour and six cents that plaintiff paid defendant from August, 1918, to October, 1921, that this suit was brought.

Some time prior to the occasion of the increase in the rate to six cents per kilowatt hour, plaintiff acquired

mine No. 2, which was electrically and more modernly equipped than mine No. 1. There was no other source from which plaintiff could procure its electricity except from the defendant city, and it became necessary to construct a power line to mine No. 2, which was done by the city, but the cost thereof was advanced by plaintiff to the city under a contract with the city wherein it was agreed that plaintiff was to be reimbursed for the money advanced by credits upon its light bills for electricity used at mine No. 2. Afterwards the bills for electricity furnished both mines were paid in this way until the cost of the line, which was $2850, was fully repaid to plaintiff.

Plaintiff was defendant's largest user of electricity and defendant's plant became of insufficient capacity to furnish electricity to its light users and plaintiff. The latter got only one-half service. The mines were being run at full capacity and the coal administrator urged the production of the greatest amount of coal possible. Complaint was made by the president and superintendent of the coal company to the city that it was not getting sufficient electricity. There were times after supper when defendant would have to turn off the lights in different parts of the city in order to let the mines run. The plant broke down due to overload. There was considerable agitation for an extension and improvement of the municipal light plant at this time and a representative of the fuel administration appeared at Macon and urged upon the city council to put in another unit so that sufficient electricity could be furnished to plaintiff's mines. The president of plaintiff appeared before the city council and Mayor and discussed the matter with them. There were a number of meetings of the council held. On account of the rising price of coal, material and labor used in the operation of the plant, it was necessary to raise the price of electricity furnished the users. It was decided that a bond issue should be submitted for the purpose of adding another unit to the plant, which was

216 M. A.—38

done and $45,000 was voted and this sum, together with $15,000 more which came out of the general revenues of the city, was spent in enlarging the plant. At these meetings the question of revenue to be derived from the installation of new equipment and machinery came up and it was decided that it would be necessary to increase the rates. The president, secretary and treasurer of plaintiff solicited the council to put in the additional unit and agreed to the raise in the rate. Mr. Forgey, the secretary and treasurer of plaintiff, stated that he would be glad to get electricity at six cents per kilowatt and "that if it was ten cents, that was cheaper than putting in machinery and running it himself." This statement was made when the request for the power line to mine No. 2 was made and the enlargement of the light plant was being discussed.

It seems that at a meeting of the council on September 9, 1918, an ordinance was passed increasing the rate to six cents per kilowatt hour. There is some question as to the regularity of the proceeding under which the increase was made or whether a formal ordinance was passed, but it seems that it was agreed, and it was understood by the members of the council, that they were passing an ordinance charging six cents but it was discovered in 1921 that the ordinance did not in fact raise the rate. The city officials acting on the theory that the rates had been raised, increased the rates of all consumers on September 15, 1918, and to six cents to the plaintiff.

It seems that there was a very close relation existing between the officers of the plaintiff and defendant; some of the officers of plaintiff during most of the time that the alleged excessive rates were being collected were members of the city council and some of them served on the light committee. There was a meter at each of the mines and plaintiff was permitted to read its own meters each month and report the result to the city; the city figured the charges and sent bills to plaintiff with the charge fixed at the rate of six cents per kilowatt. These

bills were paid. Plaintiff was at times permitted to get behind in its payments on these bills to the city. There was evidence on the part of plaintiff that after the raising of the rate to six cents, its secretary and treasurer protested to the city officials that the rate was too high, claiming that the rates were higher than the rates charged by other light plants for the same service. In sending out its bills the defendant had printed thereon that if they were not promptly paid the service would be discontinued and it also advertised in the newspapers to this effect. However, there is no evidence that plaintiff ever threatened to cut off plaintiff's electricity. These notices were sent out in pursuance of defendant's regulations and were not sent to plaintiff as a result of plaintiff's protest against the high charge, but it may be safely assumed that had plaintiff not paid the bills which were based upon six cents per kilowatt hour, its power would have been subject to being cut off.

It is claimed by plaintiff that the excess charge was paid under business duress; that it had no other source from which to obtain its electricity and that it protested against paying the excessive rate and is entitled to recover the difference between the rate on file with the Public Service Commission and that paid by it, for which this suit is brought. There is no evidence in the record that any of the money paid was paid in advance, that is, while there is evidence that plaintiff protested that it should pay only four cents per kilowatt hour, there is no evidence that it was required to pay in advance this claimed excessive amount in order to get service. However, we recognize the rule as contended for by plaintiff that where it is necessary to get the service in order to carry on the business, and that it is necessary that the excessive charge be paid in order to receive a future service, payments made under such circumstances are involuntary. However, we do not believe the facts that we have set out show involuntary payments on the part of plaintiff. The facts show that in order to get an improved service,

plaintiff solicited defendant to construct a power line to one of the mines and to enlarge its power plant at a large outlay of money, and agreed to pay an additional charge in order to get the service. This is true, at least, as to the construction of the power line which was a service different from that furnished the ordinary user of electricity. This case seems to fall within that class of cases as do the cases of Illinois Glass Co. v. Chicago Telephone Co., 234 Ill. 535, and Cavers v. Telegraph and Telephone Co., 201 Pac. 20.

No fraud or misrepresentation done by the city in this case is claimed nor was the money paid under a mistake of fact, although under a mistake of law in the belief that an ordinance had been passed authorizing the excessive charge and that the ordinance was valid and authorized the charge without further ado. Payment under such circumstances cannot be recovered back. [Inhabitants of Shell City v. Rumsey Mfg. Co., 39 Mo. App. 264; State ex rel. Sanborn v. Stonestreet, 92 Mo. App. 214.]

There is a strong inference from the testimony that what plaintiff was really doing was attempting to get the council to reduce the rates by ordinance rather than claiming that the rate being charged was an illegal one. The city clerk who had charge of collecting the bills for the light plant testified that no protest was ever made to him. The chairman of the light committee testified likewise. While there is testimony that the protest was made to the superintendent of the light plant, the main protest seems to have been made to the councilmen and Mayor of the city, who would be the proper parties to approach in regard to passing an ordinance lowering the rate. This idea is borne out by reason of the fact that it was not discovered until after the coal mines ceased to be operated by plaintiff that the ordinance raising the rate from four to six cents per kilowatt hour did not in fact make such a raise, when all assumed that it did. When this error was discovered by plaintiff this

suit was brought to recover the difference between four and six cents. There is much conflict in the testimony as to whether or not plaintiff's officers solicited the enlargement of the plant and agreed to a charge of six cents, but the referee found for defendant on this issue and we must accept his finding in view of the conflicting testimony. The referee having found that plaintiff agreed to the increased charge, it was not necessary for the referee to believe that the protest thereafter made, if made at all, by the officers of plaintiff was based upon the theory that the charge was illegal rather than merely an effort to get the city council to reduce the charge.

Plaintiff calls our attention to the fact that sections 10477 and 10478, Revised Statutes 1919, prohibit defendant from making a greater charge than that covered by its rates filed with the Public Service Commission and prevent a recovery of a greater sum, and argues that as the statute makes the charge illegal it can be recovered back regardless of the circumstances under which it was paid. Whether defendant could lawfully increase the charge even for improved service, we think there is no merit in this contention. The statute does not expressly provide for such a recovery. However in some instances where the exaction of defendant is a violation of a positive prohibition of the statute, the recovery of the amount so exacted may be had without any express authorization. This is true as to the payment of usury, the excess interest may be recovered back. But it is held under statutes similar to those cited where the excessive charge is merely prohibited without penalty that if the payments were made voluntarily they cannot be recovered. This whole subject is fully and exhaustively discussed in Kenneth and Gibson v. So. Carolina Rd. Co., 98 Amer. Decs. 382.

Plaintiff cites a number of cases, mostly railroad cases for the recovery of over-charges where the recovery was allowed although no protest was made on the payment of the overcharges. It seems to be plaintiff's

theory that these cases hold that a recovery can be had although the payment was voluntary, but the exactions in those cases were said to have been involuntarily made because plaintiffs had no other way to ship goods. It was "life or death" with them. Where a railroad company fixes its own rates and goods are tendered to an agent who has no authority to make any change in such rates, the protest would be entirely useless. Compulsion appears from the mere circumstances. The case of Brewing Co. v. St. Louis, 187 Mo. 367, cited by plaintiff recognized that protest is not always necessary in order to show compulsory payment, but no question of improved service appears in that case or the others cited by plaintiff.

We think, however, that plaintiff is entitled to recover the sum of $120 sued for, which was paid under a mistake of fact. The uncontradicted evidence shows that this money was paid as the result of over-reading of the meter. Whether the meter was read by the agents of plaintiff or those of defendant, makes no difference, plaintiff is entitled to recover back the money as it was paid under a mistake of fact. [New York Life Ins. Co. v. Gilbert, 256 S. W. 148; Mo. Pac. R. R. Co. v. Askew Saddlery Co., 256 S. W. 566.]

However, it is insisted by the defendant that part of the electricity used by plaintiff was for lights in the mines and that all the electricity went through the same meters and was paid for at the low rate given power consumers who used large quantities of electricity such as plaintiff, and as the rate for lighting is much higher than that charged plaintiff that in some way the failure of plaintiff to pay the regular rate for lighting purposes for the lights that it used should be offset against the $120 over-paid as the result of mistake. However, the record shows that all told in both mines there were only seven or eight small incandescent lights used in connection with the equipment. The mines were not electrically lighted. It appears that the electricity used for these

lights was treated by the parties as incidental to the power used, and if they were merely incidental to the power used, plaintiff was not required to pay a greater rate than it paid for the other electricity. [Amer. Brewing Co. v. St. Louis, 209 Mo. 600, 610.]

The judgment is reversed and the cause remanded. All concur.

### ON MOTION FOR A REHEARING.

BLAND, J.—Since the opinion in this case has been handed down defendant has expressed a willingness to have a judgment entered in favor of plaintiff for the $120 paid by plaintiff to defendant under a mistake of fact.

The judgment, therefore, will be reversed and the case remanded with directions to the lower court to enter judgment for plaintiff in the sum of $120.