CITY OF SAGINAW *v.* CONSUMERS POWER CO.

1. WORDS AND PHRASES—BRITISH THERMAL UNITS.
    A British thermal unit is the amount of heat required to raise the temperature of one pound of water one degree Fahrenheit at its greatest density.

2. JUDGMENT—UNITED STATES COURT.
    The decree of a Federal court to which defendant had case removed is final and binding upon the parties.

3. SAME—PARTIES BY REPRESENTATION.
    Parties to a suit by representation are bound by the judgment therein though not actually present.

4. INJUNCTION—DAMAGES.
    Rule that an equity court may assess damages in injunction proceedings is not mandatory.

5. JUDGMENT—CONCLUSIVENESS OF JUDGMENT.
    A judgment in a first action between parties is a bar only as to those matters actually litigated therein where a second action between the same parties is upon a different claim.

6. SAME—RES JUDICATA—GAS RATES—EXCESS CHARGES.
    Federal court decree enjoining gas company from charging higher rates than those established by arbitration after a certain date but which was silent as to excess theretofore collected was not *res judicata* of action by city and others to collect excess charges made before such date.

7. GAS—EXCESSIVE CHARGES—DURESS—PROTEST.
    Under ordinance permitting gas company to shut off gas from premises of persons in arrears on payment of charges therefor, recovery of excess was not precluded because of fact that no protest was made since such charges were paid under compulsion.

8. SAME—PAYMENT—DURESS—MOTIVE.
    The question of whether payment for gas is made under duress depends not upon the nature of the property threatened by a

Where a person is bound by or entitled to benefits of rules of *res judicata* because of judgment for or against him with reference to a particular subject matter, such rules apply in subsequent action brought or defended by another on his account, see Restatement, Judgments, § 85 (2).

Judgment on one cause of action not conclusive in subsequent action on different cause of action as to questions of fact not actually litigated and determined in first action, see Restatement, Judgments, § 68 (2).

stoppage of the gas, but upon the customer's motive for payment.

9. SAME—PUBLIC SERVICE COMMISSION—REFUNDS—CONTINUITY OF SERVICE—CONDITION PRECEDENT.

Public service commission's authorization to gas company to discontinue service to a customer whose bill remains unpaid 10 days after expiration of discount period and that, if payment is made under protest in order to secure continuity of service, refund may thereafter be made, the payment under protest is not a condition precedent to the right to refund.

10. COURTS—LAW OF THE CASE.

Law of the case, established by Federal district court decree enjoining gas company from charging a higher rate than that provided in an arbitration award after a certain date precluded relitigation of issues adjudicated thereby in subsequent action by city and others for excess charges paid prior to such date.

11. SAME—TRANSFER OF CAUSE—CLASS SUIT—REFUND OF EXCESS CHARGES FOR GAS.

Action by city and certain gas users against gas company to recover certain excess charges need not immediately be transferred to equity side of court on the ground that it is a class lawsuit, where defendant consented to make refunds to all parties entitled thereto until showing made of necessity for such transfer.

Appeal from Saginaw; Martin (William H.) and O'Neill (James E.), JJ. Submitted January 5, 1943. (Docket No. 21, Calendar No. 41,767.) Decided February 23, 1943.

Assumpsit by City of Saginaw, plaintiff, and by Charles C. Wilson and others, residents of Saginaw, intervening plaintiffs, against Consumers Power Company, a corporation, to recover overpayments made to defendant for gas. Judgment for plaintiffs. Defendant appeals. Affirmed.

*Edwin W. Koepke* (*Frank A. Rockwith* and *F. Roland Sargent,* of counsel), for plaintiffs.

*Weadock & Weadock, Walter D. Kline,* and *William R. Roberts,* for defendant.

BUTZEL, J. . Defendant Consumers Power Company was the successor by proper transfers of the rights and property of the Saginaw City Gas Company to which a 30-year franchise was granted on December 1, 1908, to sell and supply gas to the city of Saginaw and the inhabitants thereof at specified rates. The rates for the 10-year period beginning June 1, 1921, were to be determined by a majority of a board of five disinterested persons, and rates for the remaining term of the franchise also were to be fixed in a similar manner at the proper time. The franchise provided that at all times the consumers were to receive a discount of 20 cents per 1,000 cubic feet upon payment of their gas bills during the first 20 days of each month following that in which the gas was used. It was also provided that any coal or water gas or any mixture of them 'should possess not less than 570 British thermal units, a B.T.U. being the amount of heat required to raise the temperature of one pound of water one degree Fahrenheit at its greatest density. Prior to June 1, 1931, there was negotiation in regard to the use of natural gas, but nothing resulted therefrom, and an award was had pursuant to the terms of the ordinance establishing a schedule of rates to become effective as of June 1, 1931. The award contained a statement that the gas rates or prices fixed by the board were based upon and confined to the manufacture of artificial gas only, without prejudice to the effect of any future development in the natural gas field. On May 16, 1933, by virtue of the development of natural gas fields near Saginaw, defendant made a proposal for the suspension of manufactured gas rates and the substitu-

tion of natural gas under a new schedule to expire on December 21, 1938. These rates were based upon the delivery of gas of approximately 1,000 B.T.U. heating value and were very much higher per cubic foot than those provided for in the 1931 award. It was urged, however, that the greater heating value per cubic foot would decrease the volume of gas consumed, and thus result in a substantial reduction in the net cost to the consumers. Two other changes were proposed for a new contract. In place of a flat discount of 20 cents per 1,000 cubic feet, net and gross rates were proposed with scarcely any difference between the two, much to the advantage of the company. It was also proposed that the return of $7\frac{1}{4}$ per cent. on capital invested, as allowed under the former arbitration award, should apply only to the investment in the property used in the manufacture and distribution of artificial gas, and that the company be allowed a return of 8 per cent. on any new investment required for natural gas.

On June 27, 1933, by resolution of the common council, an agreement was entered into, along the lines proposed, between the common council of the city of Saginaw and the defendant subject, however, to the condition that such agreement expire December 21, 1935. Defendant put in the necessary pipes and equipment so as to bring natural gas to Saginaw and furnish it to the consumers. The company made a tremendous saving in the cost of natural gas furnished over the previous cost of manufactured gas but was obliged to expend a sum for pipes, new equipment, and installation of proper burners, et cetera, in the homes and places of business of consumers.

On September 19, 1933, Ernest L. Krause and two other users of the company's gas services, on be-

half of themselves and the people of Saginaw, filed a bill to enjoin the collection of the new rates. Defendants had the case removed to the United States district court for the eastern district of Michigan, northern division. The city of Saginaw was joined. During the pendency of the litigation, the council of the city of Saginaw revoked the previous agreement and acceptance of the former proposal of the defendant to supply natural gas on the ground that it lacked jurisdiction to change the original franchise. As the pleadings stood before the hearing of the case in the Federal court, the city of Saginaw also sought the forfeiture of the entire franchise. It also joined with the plaintiffs in asking that the company be enjoined from charging higher gas rates than were provided for in the award of June, 1931.

The United States district judge rendered an opinion that the attempted change by the common council of the award of June, 1931, was void *"ab initio;"* that entering into any agreement with the defendant for supplying natural gas was in violation of section 25 of article 8 of the Michigan Constitution of 1908, which forbids any city or village granting any public utility franchise that is not subject to revocation at the will of the city or village, unless such proposition shall have first received an affirmative vote of three-fifths of the electors of such city or village voting thereon at a regular or special municipal election, et cetera. A decree was entered in accordance with the opinion. The company appealed to the United States circuit court of appeals, 6th circuit, and the decree of the district court was affirmed. *Consumers Power Company* v. *Krause* (C. C. A.), 89 Fed. (2d) 565. The circuit court of appeals held that the city was not entitled to insist on forfeiture of the franchise;

that the contract between the gas company and the city of Saginaw for substitution of higher rate schedule and lower discount rate after final rate arbitration award pursuant to franchise and ordinance was ineffective as a supplement to the franchise ordinance, and that such a radical departure from the franchise could be effected only by ordinance in the manner provided for by law; that the contract between the gas company and the city' entered into after adoption of the Constitution providing for the revocation at will of a franchise by a three-fifths vote of the electors was void as provided by franchise ordinance adopted 10 days prior to the effective date of the constitutional provision, which contract was not subject to revocation and was not submitted to vote of the people, notwithstanding such provision should not be deemed a franchise. It was further held that the city, in the exercise of its right under the home rule act, * was limited by constitutional provision prohibiting the granting of any irrevocable public utility franchise without a vote of the people (Const. 1908, art. 8, § 25). The company was enjoined from charging rates in excess of those established by the last arbitration award pursuant to the franchise. The court did not fix the rate but merely protected the appellees under the arbitration award. It held that the company could continue to furnish gas of more than 570 B.T.U. but could not exact a greater charge for natural gas than it was entitled to charge for manufactured gas. In its opinion the circuit court of appeals distinguished the case of *City of Niles* v. *Michigan Gas & Electric Co.,* 273 Mich. 255, and held that it did not apply to this case. It becomes unnecessary for us to discuss the opin-

* 1 Comp. Laws 1929, § 2228 *et seq.,* as amended (Stat. Ann. § 5.2071 *et seq.*).—REPORTER.

. ion further. Defendant applied to the United States supreme court for certiorari but it was denied, 302 U. S. 698 (58 Sup. Ct. 16, 82 L. Ed. 539). The decree in a forum of defendant's own choosing became final and binding upon the parties.

The decree of the district court, as affirmed, enjoined the defendant from and after January 22, 1935, from charging gas rates for gas furnished in excess of the rates theretofore established by the arbitration under the award dated August 24, 1932, but nothing whatever was said in the opinion or the decree in regard to the excess charges for gas furnished for the period commencing on or about August 22, 1933, and ending January 22, 1935. Thereupon the city of Saginaw and three plaintiffs brought the instant suit against defendant to recover the excess charges during this period. The defendant stipulated that if it should be finally determined that it was liable for such excess charges, it would make a refund to all consumers who had paid such excess. The case was heard by two circuit judges of the Saginaw circuit court. They entered a judgment ordering defendant to pay plaintiffs and interveners and all members of the class described as gas consumers of the city of Saginaw the amount of the excess. Defendant has appealed.

Many questions are raised. We regard only a few of them as of real importance and decisive. The case was presented on a stipulation of facts. Some of the questions are raised only inferentially but are so woven into other questions that we shall discuss them.

Defendant claims that the former litigation and decree therein is *res judicata,* that inasmuch as the Federal court did not order a return of the alleged excess charges for the period for which the suit is

brought in the instant case, plaintiffs may not recover. On the other hand, plaintiffs contend that the decision in the first case is *stare decisis,* and that, as was stated in the opinion in the United States district court, the agreement in regard to higher rates was void *ab initio,* that the law of the case has been made, and that they may, therefore, recover the amounts that defendant illegally collected. As the issue of the validity of the contract was litigated between the identical parties, it is claimed that the requisites for *res judicata* are fully present. The intervening plaintiffs, while not actually present in the former suit, were parties by representation and are bound by the judgment therein. *American State Savings Bank, Trustee,* v. *American State Savings Bank,* 288 Mich. 78, 89; *City of Detroit* v. *Detroit United Ry.,* 226 Mich. 354; *McIntosh* v. *City of Pittsburgh,* 112 Fed. 705. The only question presented is whether the claim for excess charges is barred by the prior litigation, under *Dodge* v. *Detroit Trust Co.,* 300 Mich. 575. The rule that an equity court may assess damages in injunction proceedings (*Hall* v. *Nester,* 122 Mich. 141; *Baldwin* v. *Escanaba Liquor Dealers' Association,* 165 Mich. 98) is not mandatory. The two causes of action are separate and distinct; the first sought the protection of a right, the instant one redress for its invasion. *Louisville Gas Co.* v. *Kentucky Heating Co.,* 132 Ky. 435 (111 S. W. 374); *Kelliher* v. *Stone & Webster, Inc.* (C. C. A.), 75 Fed. (2d) 331; *Caruthers* v. *Hines* (Tex. Com. App.), 290 S. W. 155. Where the second action between the same parties is upon a different claim, the prior action is a bar only as to those matters actually litigated therein. *Bond* v. *Markstrum,* 102 Mich. 11; *Cromwell* v. *County of Sac,* 4 Otto (94 U. S.), 351 (24 L. Ed. 195); *Lawrence* v. *Stearns,* 79 Fed.

Saginaw v. Consumers Power Co.

878; *Foye* v. *Patch,* 132 Mass. 105. The rule in
*Dodge* v. *Detroit Trust Co., supra,* is therefore in-
applicable.

That the claim for excess charges for the period
prior to January 22, 1935, was not before the Fed-
eral court is also shown by an examination of the
pleadings. While in the underwriting to the orig-
inal summons dated September 21, 1933, it was
stated that ''a permanent and mandatory injunc-
tion, an arbitration, redetermination and adjust-
ment of gas rates'' and personal decree is sought, a
careful reading of the bill of complaint shows that
in the relief prayed for, a temporary injunction was
asked, that, at the hearing of which, the court might
determine a fair and just and reasonable value of
natural gas, and that, if defendant is permitted to
collect a greater rate, the excess should be deposited
with the master in chancery; that on the final hear-
ing the court should determine whether or not such
excess should be returned to the consumers of nat-
ural gas or to the defendant, and that a permanent
injunction should be issued enjoining defendant
from collecting any excess charges it is not entitled
to. Evidently no such *temporary injunction* was
granted for the court did not even pass on any ques-
tion of the return of these excess charges for the
interim immediately between the filing of the suit
and the entry of the decree, nor for any period prior
thereto during which illegal exactions were made
and paid.

The claim for overpayments is resisted on the
ground that the payments were made without pro-
test and under a mistake of law. Plaintiffs con-
tend that since under the ordinance defendant could
stop the supplying of gas in case of a failure to pay
charges, payments were made under duress and are
recoverable. Defendant, on the other hand, main-

tains that the record itself carries the presumption that the payments were voluntary, and that the issue of compulsion was raised for the first time on appeal and should not be considered. The ordinance itself is in the record, however, and it provides that the company may stop gas from entering the premises of such person or persons in arrears. Under such an arrangement the parties were not dealing upon equal terms. The latent threat that the gas company would shut off the gas was constantly before the consumer. Therefore, payment was not made upon a mere demand for money without power of enforcement except by an action at law. *Indiana Natural & Illuminating Gas Co.* v. *Anthony,* 26 Ind. App. 307 (58 N. E. 868). It follows that to deny recovery would mean depriving consumers of gas until by the institution of legal proceedings they could establish the fact that the charges were illegal. This would be a "kind of execution in advance of judgment." *Panton* v. *Duluth Gas & Water Co.,* 50 Minn. 175 (52 N. W. 527, 36 Am. Rep. 635). The facts being within the knowledge of the company, the party making payment naturally presumes that the law is being complied with. *Pingree* v. *Mutual Gas Co.,* 107 Mich. 156.

"Indeed, gas bills are generally so small that it does not pay to question their amounts." *Boerth* v. *Detroit City Gas Co.,* 152 Mich. 654, 657 (18 L. R. A. [N. S.] 1197).

Thus, as a matter of law, the circumstances herein presented created a necessity of payment. This being the case, the payments were made under compulsion to a party who had no right to receive them and they are, therefore, recoverable. See, generally, *City of Chicago* v. *Northwestern Mutual Life Ins. Co.,* 218 Ill. 40 (75 N. E. 803, 1 L. R. A. [N. S.]

770); *American Brewing Co.* v. *City of St. Louis,* 187 Mo. 367 (86 S. W. 129); *Piedmont Power & Light Co.* v. *L. Banks Holt Manfg. Co.,* 183 N. C. 327 (111 S. E. 623).

Defendant calls attention to *Cavers* v. *Home Telephone & Telegraph Co.,* 117 Wash. 299 (201 Pac. 20), which we decline to follow. In that case, recovery of excess charges was denied on the ground that payments were made for residence telephones and not through the exigencies of business. The court cited the *Pingree Case, supra,* but we do not believe it applies. The question of whether payment was made under duress depends not upon the nature of the property threatened by a stoppage of gas, but upon the customer's motive for payment. So long as payment was made to secure future service, it is not important whether the interests affected are commercial or residential.

Defendant contends that payment under protest is a condition precedent to the right to refunds under order no. 1982 of the Michigan public utilities (now service) commission, 1926 Orders and Opinions of the Michigan Public Utilities Commission, p. 322, where it is stated that if the bill remains unpaid 10 days after the expiration of the discount period, the company shall have the right to discontinue service to the consumer on five days' written notice, provided that if the bill in question is paid under protest to secure continuity of service, the consumer shall be entitled to refund if it is later shown that the bill was in error. The regulation prescribes the conditions under which a utility may discontinue service to a consumer. It does not prescribe the conditions under which a consumer can secure refund for excess charges. His rights being unaffected by the regulation, protest was unnecessary. "An objection would imply knowledge

of the fact." *Pingree* v. *Mutual Gas Co., supra; Home Coal Co.* v. *City of Macon,* 216 Mo. App. 590 (262 S. W. 59).

Defendant has cited many cases in an attempt to try the case of *Consumers Power Co.* v. *Krause, supra,* all over again. The law of the case in this instance intervenes to preclude our relitigating the issues adjudicated in the Federal court in the *Krause Case* and, therefore, we need not discuss the applicability of *Erie R. Co.* v. *Tompkins,* 304 U. S. 64 (58 Sup. Ct. 817, 82 L. Ed. 1188, 114 A. L. R. 1487).

As we base our opinion upon the decision in the former case, we shall not discuss the many citations contained in the various briefs filed. The circuit court rendered a judgment in favor of the plaintiff and interveners for the full amount of the excess charges. Inasmuch as the appellee has voluntarily consented to make refunds to all others similarly affected, we do not believe it necessary to transfer the case to the equity side of the court on the ground that it is a class lawsuit. If it shall hereafter become necessary to transfer such case, an order may be entered in the circuit court making such transfer upon application.

Judgment of the trial court is affirmed, with costs to appellees.

BOYLES, C. J., and CHANDLER, NORTH, STARR, WIEST, BUSHNELL, and SHARPE, JJ., concurred.