## COUYOUMJIAN v. ANSPACH.

1. JUDGMENT—RES JUDICATA—PARTIES—FRAUD BY ATTORNEY.
   Defendant attorney in action for fraud who had represented a woman in suit for divorce and in her subsequent action of ejectment against plaintiffs herein for property to which the woman obtained title in the divorce proceedings was not bound by the *sua sponte* determination of the circuit judge, who had heard the ejectment action and countersuit by plaintiffs herein to restrain such action, that woman was not a resident of this State, and vacation of decree of divorce on ground of fraud, where defendant herein was not a party either directly or as a member of a class represented as a party in the proceedings resulting in the *sua sponte* order (CL 1948, § 601.64).

2. SAME—RES JUDICATA—PARTIES.
   Whether or not plaintiff in suit for a divorce was or was not a resident of this State at time of institution of suit, a jurisdictional matter and involved in subsequent litigation, should have been determined in instant action for fraud against her

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2]  30A Am Jur, Judgments § 431.
   Judgment as *res judicata* or conclusive as to party's attorney who was not himself a party.  137 ALR 586.
[3]  17 Am Jur, Divorce and Separation §§ 285–288.
   What constitutes residence or domicil within State for purpose of jurisdiction in divorce.  159 ALR 496.
[4–6]  17A Am Jur, Domicil §§ 82, 83.
   Change of State or national domicil of mental incompetent.  30 ALR 607.
[7]  3 Am Jur, Appeal and Error § 1124.
[8]  17 Am Jur, Divorce and Separation § 532.
   Standing of strangers to divorce proceeding to attack validity of divorce decree.  12 ALR2d 717.
[9]  5 Am Jur, Attorneys at Law § 147.
[10]  58 Am Jur, Witnesses § 499.
[11]  24 Am Jur, Fraud and Deceit § 270.
[12]  3 Am Jur, Appeal and Error § 589.
   24 Am Jur, Fraud and Deceit § 270.

attorney by reason of alleged fraud in obtaining a divorce affecting title to property plaintiffs later acquired, since the attorney was not a party so involved as to have the matter *res judicata* as to him (CL 1948, § 601.64).

**3.** Divorce—Jurisdiction—Residence.

Residence, as used in establishing jurisdiction of suit for divorce, is to be determined by the fact of abode and the intention of remaining.

**4.** Insane Persons—Residence.

Person who was a resident of this State at time she was adjudicated mentally incompetent and committed to an institution of this State did not lose her residence herein by reason of the fact that before adjudication of sanity and restoration of civil rights, she had been "paroled" to the custody of a nonresident and spent the year with relatives in another State (CLS 1956, §§ 330.36, 330.37a).

**5.** Divorce—Jurisdiction—Residence—Insane Persons.

Jurisdiction of suit for divorce was lodged in court by plaintiff who commenced suit therefor on day of entry of order restoring her to sanity, where she was a resident of this State when committed, notwithstanding that for the year prior to adjudication of sanity she had been "paroled" to and resided with relatives in Pennsylvania (CLS 1956, §§ 330.36, 330.37a).

**6.** Fraud—Attorney—Divorce—Jurisdiction—Residence.

Fraud on part of defendant attorney in litigation involving title to property purchased by plaintiffs under deed containing forged signature of woman for whom defendant had obtained a divorce may not be predicated upon claim of fraud as to residence of the woman affecting jurisdiction in the suit for divorce under circumstances involved, since there was no fraud as to jurisdiction based upon satisfaction of residence requirements (CL 1948, § 601.64).

**7.** Same—Attorney—Instruction—Res Judicata.

Instruction in action against attorney for fraud and deceit that unappealed determination by presiding circuit judge in prior litigation that decree of divorce which defendant had previously obtained was set aside because "of fraud, lack of jurisdiction, and for other reasons appearing to the court" was *res judicata* and binding upon the court and jury, which determination was in error in that divorce court did have jurisdiction *held*, prejudicial and reversible error, especially in view of trial court's failure to advise that the fraud in

.the previous litigation had not been found therein to have been that of defendant herein (CL 1948, § 601.64).

8. JUDGMENT—COLLATERAL ATTACK.
   The validity of an unappealed decree of divorce may not be attacked by third parties except for lack of jurisdiction.

9. FRAUD—ATTORNEY—INJURED PARTIES.
   Plaintiffs herein, who had been defendants in action of ejectment by a plaintiff who sought relief based on a decree of divorce which was claimed to have been obtained by the fraud of defendant herein, an attorney, in action for fraud and deceit, were entitled to maintain such action as "injured parties" notwithstanding they had not been parties to the divorce suit, since the basic claim herein is that defendant knew the title upon which he sought ejectment was defective (CL 1948, § 601.64).

10. DEPOSITIONS—ATTORNEY AND CLIENT.
   A deposition taken in prior litigation by an attorney engaged in his professional capacity may not be used in an action against him for alleged fraud and deceit, since to do so would subvert the relationship between attorney and client.

11. FRAUD—ATTORNEY—INTENT—EVIDENCE.
   Admissibility in evidence of proof of defendant attorney's intent in action for fraud and deceit is dependent upon the similarity of the defendant's conduct in other instances to his conduct in the case at bar, assuming proximity of time (CL 1948, § 601.64).

12. APPEAL AND ERROR—QUESTIONS REVIEWABLE—INTENT—EVIDENCE.
   Whether or not files in other cases were properly excluded in action against attorney for fraud and deceit is not determined on appeal, where record fails to include files of other cases, such files being admissible, if at all, only on matter of intent (CL 1948, § 601.64).

Appeal from Wayne; Bohn (Theodore R.), J. Submitted January 13, 1960. (Docket No. 62, Calendar No. 48,433.) Decided June 7, 1960.

Case by Karl Couyoumjian and Grace Couyoumjian against Robert D. Anspach, an attorney, for punitive damages because of deceit. Verdict and

judgment for plaintiffs. Defendant appeals. Plaintiffs cross-appeal. Reversed and remanded for new trial.

*Dee Edwards,* for plaintiffs.

*Moll, Desenberg, Purdy & Glover,* for defendant.

SOURIS, J. Defendant is a lawyer against whom a judgment in the amount of $8,391 was entered on a jury's verdict in a suit by plaintiffs for treble damages for violation of CL 1948, § 601.64 (Stat Ann § 27.84), which provides:

"Sec. 64. Any attorney or counselor who shall be guilty of any deceit or collusion, or shall consent to any deceit or collusion, with intent to deceive the court or any party, shall be deemed guilty of a misdemeanor, and on conviction shall be punished by fine not exceeding $1,000, or imprisonment in the county jail not exceeding 6 months, or both, in the discretion of the court, and shall also be liable to the party injured by such deceit or collusion, in treble damages sustained, to be recovered in a civil action."

Mr. Anspach, defendant, once represented as an attorney a Mrs. McGuire. Before his retention by her, Mrs. McGuire had been committed as mentally incompetent to Wayne County General Hospital in 1945. At the time of her commitment, she and her husband owned real estate in Detroit as tenants by the entireties. In 1947, during her commitment, her husband executed a deed conveying the property to a Nell R. Selander. Mrs. McGuire's signature was forged to that deed, which fact is conceded by the parties to this lawsuit. Miss Selander subsequently executed a deed to Mr. and Mrs. Haneberg, and in 1948 they, in turn, executed a deed to plaintiffs.

Mrs. McGuire remained in the hospital from 1945 until July of 1953, at which time she was "paroled"

therefrom in the custody of a cousin, Florence Nolder, who resided in Pennsylvania. While living with Mrs. Nolder and her husband in Pennsylvania from July, 1953, to July, 1954, Mrs. McGuire retained defendant to institute restoration proceedings to have her declared mentally competent and to institute divorce proceedings against her husband. On July 21, 1954, the Wayne county probate court by order duly entered declared Mrs. McGuire to be a person of sound mind. On the same day, defendant filed in her behalf a bill of complaint for divorce, in which it was alleged that she had been a resident of Michigan for 1 year immediately preceding filing of the bill. Service of process was made upon Mr. McGuire in Florida by publication and by registered mail. He had moved to Florida in 1947. In January of 1955, the late Judge Joseph A. Moynihan, of Wayne circuit, granted Mrs. McGuire a divorce and awarded her the above mentioned Detroit property at the conclusion of proceedings *pro confesso,* in which the following transpired:

"*The Court:* I think we should get the statutory questions pertaining to jurisdiction out of the way first—residence in the State of Michigan and residence in the county of Wayne.

"*Mr. Anspach:* I will have to bring that out. * * *

"*Q. (Mr. Anspach continuing)*: Now, Mrs. McGuire, when were you released from the actual detention in Eloise?

"*A.* 1953.

"*Q.* Do you know about what date—what month?

"*A.* July.

"*Q.* And where did you go to stay after you were released from Eloise?

"*A.* I went to live with a cousin in Pennsylvania.

"*Q.* What do you consider to have been your home on July 21, 1954? Were you a resident; did you consider yourself a resident of Michigan or Pennsylvania at that time?

"*A.* No—I have been a resident of Detroit for 20 years.

"*Q.* And do you have a home here?

"*A.* No, I don't; my home is in Detroit, Michigan.

"*Q.* Yes, but you have a home in Detroit, Michigan?

"*A.* Yes.

"*Q.* Where is that?

"*A.* 16177 Prairie.

"*Q.* Now, have you any plans as to where you are going to live in the future?

"*A.* I would like to go back to my home in Detroit, Michigan.

"*Mr. Anspach:* In this case, as the court will see, we have some question as to residence. I have a case here—

"*The Court:* As I understand it now, she had been a resident of the State of Michigan and Wayne county at the time of her commitment?

"*Mr. Anspach:* Yes.

"*The Court:* And then that commitment then was set aside by exhibit 1 in this case and she was restored to sound mind?

"*Mr. Anspach:* Yes.

"*The Court:* And she part of the time lived in Pennsylvania—I suppose with friends or someone there—but did not give up her residence in the State of Michigan?

"*Mr. Anspach:* That is right.

"*The Court:* As I get her testimony now, she claims she has always been a resident of Detroit, Michigan?

"*Mr. Anspach:* That is right.

"*The Court:* Well—

"*Q.* (*By Mr. Anspach*): Did you and your husband get along well during the time you were living together as husband and wife?

"*A.* Pretty good, but he made me awfully nervous at times.

"*Q.* During the time you were in Eloise did your husband ever visit you?

"*A.* No—only once and that was Christmas time.

"*Q.* Did he ever write you?

"*A.* No, he didn't—only once.

"*Q.* Did he ever provide you with any clothes or food?

"*A.* No, he never.

"*Q.* Did he ever send you any money?

"*A.* No, he never.

"*The Court:* Did he ever pay the county of Wayne for your care?

"*A.* No, he did not; he didn't even pay Receiving Hospital.

"*Q.* (*By Mr. Anspach*): And is that why you are asking for a decree of divorce?

"*A.* Yes, it is.

"*Q.* Where does your husband live now?

"*A.* He lives in Ocala, Florida.

"*Q.* Does he know you are out of Eloise?

"*A.* Yes, sir, he does.

"*Q.* Has he ever sent for you?

"*A.* No.

"*Q.* Has he ever asked you to come down there?

"*A.* No; he has never even answered none of my letters.

"*Q.* You have written to him; is that right?

"*A.* Yes.

"*Q.* What did you ask him?

"*A.* I asked him if he would care to go back with me and start life over again.

"*Q.* And he never answered?

"*A.* No.

"*Q.* Or sent you money to come down there?

"*A.* No. * * *

"*Q.* (*By Mr. Anspach*): Witness, you and your husband are the owners of a piece of property here in Detroit, are you not?

"*A.* Yes, sir.

"*Q.* And you are asking the court to determine that you are the owner of that property, free and clear of any claims on the part of your husband?

"*A.* That is right. * * *

"*The Court:* Mrs. McGuire, what does this estate consist of; is it a vacant lot or house and lot?

"*A.* It is a frame home with a lot.

"*The Court:* And is it rented to some other parties?

"*A.* I don't know.

"*The Court:* Do you know?

"*Mr. Anspach:* The husband has been in charge of that, Your Honor.

"*A. (Continuing):* He has charge of that. I haven't found that out as yet.

"*The Court:* Do you think he is collecting the rents for it?

"*Mr. Anspach:* I understand he has sold the place or has attempted to sell it. I don't know who the prospective buyer is.

"*The Court:* The only thing—you are going to put somebody to a lot of trouble—innocent purchasers to a lot of trouble.

"*Mr. Anspach:* The property is owned by these people as tenants by the entireties and any disposition he attempted to make of the house would have no effect whatsoever.

"*The Court:* Was he her guardian?

"*Mr. Anspach:* No; the sister with whom he is living at the present time was her guardian.

"*The Court:* Of both the person and the estate?

"*Mr. Anspach:* Yes.

"*The Court:* So she could have signed a deed?

"*Mr. Anspach:* Only if she had gotten permission from probate court.

"*The Court:* Well, if she was appointed guardian of this witness's person and property, what permission would she have to get from the probate court?

"*Mr. Anspach:* Before you can sell this property you have to get a license to sell; you must have the property appraised by 2 freeholders.

"*The Court:* Was any inventory ever filed?

"*Mr. Anspach:* Yes; there was an inventory which shows this property was owned by these people.

"*The Court:* This particular piece of property?

*"Mr. Anspach:* Yes; this property is described in the inventory.

*"The Court:* All right.

*"Mr. Anspach:* Step down."

Upon entry of the divorce decree, Mrs. McGuire conveyed by quitclaim deed a 60% interest in the property awarded to her by the decree to Mr. and Mrs. Nolder (her Pennsylvania cousin and the cousin's husband) and a 40% interest to Atlantic Development Corporation, a Michigan corporation, the capital stock of which was in the names of defendant's children. The interest in the property conveyed to the corporation, defendant admitted, was to secure to defendant the legal fees to which he was entitled for handling Mrs. McGuire's various legal matters.

Defendant thereupon instituted ejectment proceedings against Mr. and Mrs. Couyoumjian, plaintiffs herein, in the name of the Nolders and Atlantic Development Corporation. The Couyoumjians, in turn, instituted proceedings in chancery against Mrs. McGuire, the Nolders, Atlantic Development Corporation, and the defendant's children (by their guardian *ad litem*), individually and as incorporators *(sic?)* of the corporation, for the following relief:

"(a) That they may be decreed to be the owners in fee simple of said premises.

"(b) That Samuel Nolder and Florence Nolder, his wife, Irene C. McGuire and Atlantic Development Corporation, a Michigan corporation, be decreed to have no interest whatsoever in said premises.

"(c) That, in the alternative, they may be allotted such sums as will adequately compensate them for expenditures made for improvements, repairs, additions, taxes, and insurance on said property.

"(d) That the defendants herein may be permanently enjoined from bringing any action against plaintiffs herein or their successors in title based up-

on the purported decree of divorce entered in the Wayne county circuit court in chancery, cause entitled Irene C. McGuire versus Thomas E. McGuire being No. 521,462.

"(e) That the proceedings in the ejectment action, being Wayne county circuit court Number 279–770, may be stayed pending the hearing of this cause.

"(f) That plaintiffs may have such other and further relief as shall appeal to equity and good conscience."

The chancery action and the ejectment action were tried together before Judge Moynihan, with the result that a judgment of no cause of action was entered in the ejectment case, a decree determining that the Nolders, Mrs. McGuire, and Atlantic Development Corporation had no interest in the property and enjoining the assertion by them of any such interest was entered in the chancery suit, and, *sua sponte,* Judge Moynihan entered an order in the original divorce suit setting aside the decree of divorce on the grounds of fraud and lack of jurisdiction (by which Judge Moynihan meant, it is assumed, that Mrs. McGuire was not a resident of Michigan for 1 year preceding the filing of her bill of complaint for divorce).

Plaintiffs herein then started this suit against the defendant, claiming that the ejectment case instituted by him as an attorney constituted deceit upon the court because defendant knew at the time he instituted ejectment that his clients did not have good title to the property, their title being dependent upon an invalid divorce decree. Plaintiffs' claim is not that defendant Anspach discovered after the divorce, but before instituting ejectment, that his client did not have the requisite statutory* residence at the

---

* CL 1948, § 552.9, as amended by PA 1953, No 174 (Stat Ann 1953 Rev § 25.89). (The pertinent residential requirement has remained unchanged in all recent amendments.—REPORTER.)

time the bill for divorce was filed; nor is it that defendant discovered after the divorce, but before instituting ejectment, that his client had perjured herself at the divorce hearing by her testimony about her residence and about the entireties property. Plaintiffs' claim, instead, is that defendant Anspach knew before the divorce proceeding was instituted that his client did not have the requisite residence; that, at the divorce hearing, he actively participated with his client in perpetrating a fraud upon the court with reference to his client's residence and also with reference to the record title of the entireties property; and that, having participated in such fraud upon the court in the divorce proceeding and knowing that the divorce decree thereby obtained was a nullity, his institution of the ejectment suit constituted deceit within the meaning of the statute because he knew the title his ejectment clients asserted was based upon that invalid divorce decree.

Trial was had on the issues thus presented before a jury, which returned a verdict against defendant in the amount of $8,391, representing treble damages under the statute. On appeal, defendant claims several prejudicial errors, not all of which need be discussed in view of our disposition of the appeal.

At the conclusion of the joint trial of the ejectment action and the chancery suit, Judge Moynihan entered an order on his own motion in the prior divorce action setting aside the decree of divorce because "of fraud, lack of jurisdiction, and for other reasons appearing to the court." In the charge to the jury in the deceit action, the case at bar, the trial judge told the jury:

"I charge you further that the order of Judge Moynihan is *res judicata,* in other words, it is binding on this court, and it is binding on this jury, since there was no appeal from that order. I charge you that you cannot in this action re-decide the question

of fraud and lack of jurisdiction in this court to grant that decree of divorce."

The court then read Judge Moynihan's order setting aside the divorce decree.

Defendant contends that Judge Moynihan's order vacating the decree was not *res judicata* as against him in the suit at bar with respect to the question of Mrs. McGuire's residence. We agree, but the trial court charged the jury that it was. Defendant was not a party, either directly or as a member of a class represented as a party, in the proceedings which resulted in the judge's *sua sponte* order vacating the divorce decree for, *inter alia,* lack of jurisdiction.

Nor was defendant within any other classification of persons bound by a prior adjudication. Plaintiffs claim defendant is bound because of his alleged privity with Atlantic Development Corporation, which was a party in the equitable action which resulted in Judge Moynihan's *sua sponte* order in the divorce case, and they cite *Walsh v. Varney,* 38 Mich 73, and *Saginaw v. Consumers Power Co.,* 304 Mich 491, at 498, in support thereof. In *Walsh v. Varney* this Court held that a partition decree bound all interests claiming under parties to the suit. *Saginaw v. Consumers Power Co.* was a case in which intervening plaintiffs were held bound by a prior adjudication, having been represented in the prior suit as members of a class. Neither case is applicable here. Whether or not Mrs. McGuire was a Michigan resident when her bill of complaint was filed, therefore, should have been determined in the suit at bar.

The parties agree that residence, as used here, is to be determined by the fact of abode and the intention of remaining. *Smith v. Foto,* 285 Mich 361 (120 ALR 801). Plaintiffs argue that, regardless of Mrs. McGuire's intention, she was physically absent from

Michigan during the 1-year period preceding the filing of her bill of complaint and that "constructive residence" or constructive presence in Michigan is not sufficient, citing *Banfield* v. *Banfield,* 318 Mich 38. *Banfield* v. *Banfield* held that a war bride, married in England to a Michigan resident who left her in England upon his return to the country, could not bring suit for divorce in Michigan based solely upon her claim of residence by virtue of her husband's Michigan residence.

We do not intend to overrule or otherwise limit our previous decisions requiring actual abode in Michigan as a prerequisite to the statutory residence requirements in divorce actions. However, the peculiar facts involved herein compel us to hold that Mrs. McGuire did not lose her Michigan residence when she went to live with relatives in Pennsylvania to whom she was "paroled" from the mental institution by its medical superintendent. While a resident of Michigan, she was adjudged to be mentally incompetent in 1945 and committed to an institution in Michigan. She remained there until July of 1953 in the legal custody of said superintendent. CLS 1956, § 330.37a (Stat Ann 1956 Rev § 14.827[1]). Without having her rights as a sane person judicially restored, and while still in the legal custody of the medical superintendent, she was granted a leave of absence and spent the ensuing year with relatives in Pennsylvania. CLS 1956, §§ 330.36 and 330.37a (Stat Ann 1956 Rev §§ 14.826 and 14.827[1]). To hold that she lost her Michigan residence thereby would be unconscionable. By such a holding, we would have to assume she was capable of intending to relinquish her residence here even before she was adjudicated sane and judicially restored to her civil rights. This assumption we cannot make. *McCampbell* v. *McCampbell* (WD Ky), 13 F Supp 847. See also annotation at 30 ALR 607. We hold that Mrs.

McGuire was still a resident of the State of Michigan in July of 1954 when the Wayne county probate court by order adjudged her once again sane and on which day she filed her bill of complaint for divorce. The court, therefore, had jurisdiction to entertain her suit for divorce on the facts here presented, and the court in the case at bar should have so instructed the jury. If defendant were guilty of deceit or collusion within the meaning of the statuté quoted at the beginning of this opinion, such deceit or collusion was not founded upon Mrs. McGuire's lack of residence in Michigan.

This is not to say, however, that there was not sufficient evidence presented in this case to submit to the jury the question of defendant's alleged deceit or collusion, provided that the question submitted be limited to the representations made to Judge Moynihan respecting the McGuires' entireties property.

Following the charge, trial counsel and the judge retired to chambers, where the following transpired:

"*Mr. Gillis:* One further point: The court said that the question of fraud—whether fraud was committed was *res judicata;* that this jury could not decide that question, because Judge Moynihan had already decided fraud had been committed. I think, then, it would only be fair to tell this jury Judge Moynihan did not decide this defendant committed any fraud.

"*The Court:* I cannot say that.

"*Mr. Gillis:* Well, it does not appear from the order.

"*The Court:* No; but the order speaks for itself.
* * *

"*Mr. Gillis:* I agree that you could not instruct them—that the court could not instruct them that it wasn't Mr. Anspach's fraud; but I do think this court should instruct this jury they can determine themselves in this cause that it was not Mr. Anspach's fraud that the court was speaking of.

"*Miss Edwards:* I don't think the jury can do that. I think all the evidence in the case is that Anspach objected to that order because he wanted 'fraud of the plaintiff' inserted. He testified to that. He said that was one of his objections; and the court refused to put it in; and the only testimony is (which would support it)—the only inference that the court was not convinced that it was only the fraud of the plaintiff.

"*Mr. Gillis:* Then we are going beyond the order.

"*Miss Edwards:* Well, you want to go behind it and put in something that is not there.

"*Mr. Gillis:* I don't want to go behind it. But I don't want that order to say more than it does say. It says the decree is set aside for fraud; but it doesn't say it was Mr. Anspach's fraud. We cannot infer that it does because Mr. Anspach requested some additional insertion in the order. And this instruction to this jury, I feel, leaves them with the impression that they are bound to find that Mr. Anspach committed a fraud, and Judge Moynihan so found, and that is *res judicata.*

"*The Court:* No; I don't think that is the purport of the instruction."

No other reason appears why the trial court refused defendant's counsel's request for an explanatory, limiting instruction. It appears to this Court, reading the charge as a whole, that the purport of the charge, particularly that portion quoted above, is, as claimed by defendant, that his fraud was determined by Judge Moynihan's order and that said order was binding upon the jury. No harm could have resulted from granting defendant's counsel's request for clarification to the jury, clarification which might have saved the charge from claim of prejudicial error for, as noted above, plaintiffs planted their right to relief upon defendant's participation in the alleged fraud and not merely upon his subsequent knowledge thereof.

Although Judge Moynihan obviously concluded that fraud had been perpetrated upon him by somebody, it does not appear from his order that this defendant took part therein or that the fraud necessarily related to the proofs concerning Mrs. McGuire's residence. (It may have been his finding that the fraud referred to in his order related only to the proofs concerning ownership of the entireties property.) In any event, it should be noted that Judge Moynihan's *sua sponte* order vacating the decree of divorce is subject to the objection that it could not be based upon any finding other than a lack of jurisdiction. Stated another way, the validity of the decree of divorce could not be collaterally attacked by third parties except for lack of jurisdiction. *Pettiford* v. *Zoellner,* 45 Mich 358, and *Jackson City Bank & Trust Co.* v. *Frederick,* 271 Mich 538. Hence, the finding of fraud in Judge Moynihan's order cannot be considered *res judicata* as against anyone, let alone one not a party plaintiff or defendant in the proceeding in which such finding was made.

We find, therefore, that the trial court's instruction to the jury that Judge Moynihan's order was binding on them, not only as it related to Mrs. McGuire's residence, but also as it related to the finding of fraud, was error. When consideration is given to the court's denial of defendant's request that said charge be limited so that it would not bar the jury from considering and deciding whether or not this defendant committed any fraud upon Judge Moynihan, the charge as given was highly prejudicial to defendant for the reason that proof of defendant's participation in such fraud was an essential element of the case plaintiffs chose to make against defendant.

Defendant assumes in his brief that the deceit for which damages are claimed by plaintiffs occurred in

the divorce action and, since plaintiffs were not parties thereto, they are not "injured parties" within the meaning of CL 1948, § 601.64 (Stat Ann § 27.84), entitled to sue him for damages. Defendant's assumption is wrong. As previously noted, plaintiffs' claim is that defendant deceived the court in the ejectment action (by claiming a legal title in his clients, which title he allegedly knew was defective by virtue of the fraud perpetrated in the divorce suit), and, since plaintiffs here were defendants in the ejectment suit, we hold that they are entitled to sue under the provisions of the cited statute.

For the reasons set forth above, the judgment below must be reversed and this cause remanded to the circuit court for new trial. However, several other questions are raised by the parties which, by their nature, suggest the probability of their recurrence during the retrial.

Mrs. McGuire did not testify as a witness at the trial, nor was her testimony taken by deposition in this proceeding. However, a transcript of her testimony taken by deposition in the chancery suit instituted by plaintiffs herein was introduced in evidence (and even taken to the jury room by the jury) over the objection of defendant. The transcript of Mrs. McGuire's previous testimony should not have been admitted in the case at bar. Defendant was not a party, nor was he in privity with a party, nor otherwise represented by any party, to the chancery suit in which the deposition was taken. Plaintiffs cite *Campau* v. *Dubois,* 39 Mich 274, and *School District of Pontiac* v. *Sachse,* 274 Mich 345, in support of the admission of the deposition. But neither case is applicable here. In *Campau,* an ejectment action, depositions were admitted which had been taken in prior partition proceedings involving the title to the same lands. It appears from the opinion of the Court that the parties to the ejectment action were

in privity with parties, or were parties themselves, to the partition suit. In the *Sachse Case* the transcript of testimony taken of a witness since deceased in a prior criminal case was held admissible, the Court noting that the defendant against whom the testimony was offered and admitted was also the defendant in the criminal case and had an opportunity for full cross-examination. Although defendant in the case at bar represented as an attorney defendants in the prior chancery suit and cross-examined Mrs. McGuire at the deposition proceedings therein, such cross-examination was conducted not in his own behalf, but rather in behalf of his clients, whose interests were far different from his own interests involved in this action. To permit the use of such depositions in this type of action against an attorney on the ground that the attorney was involved in his professional capacity in a prior proceeding in which the deposition was taken would subvert the relationship between lawyer and client. Whose interest should the lawyer participating in such examination serve—his client's immediate interest or some potential future interest of his own?

Finally, we come to plaintiffs' cross-appeal in which they seek reversal of the trial court's exclusion of evidence of "similar conduct in other cases on the part of defendant" and its refusal to permit his cross-examination regarding the manner in which he practiced law. We have examined the record and find that there is no such error disclosed therein.

Certainly plaintiffs are entitled to introduce evidence of similar conduct by defendant (for the purpose of showing fraudulent intent), but such similar conduct must have occurred shortly before or after the conduct involved in the suit at bar. See *Stubly* v. *Beachboard,* 68 Mich 401, *Jordan* v. *Miller,* 232 Mich 8, and *Baloyan* v. *Furniture Exhibition Building Co.,* 258 Mich 244. Plaintiffs' offer of proof

included several files of prior circuit court suits in which defendant was allegedly involved. The record before us does not include such files, and without them we cannot pass upon the trial court's exclusion thereof. Upon retrial, if again offered for the same purpose, their admissibility will depend upon the similarity of the defendant's conduct in those cases to defendant's conduct in the case at bar, assuming proximity of time.

Plaintiffs claim the trial court improperly barred them from cross-examining defendant regarding the manner in which he practiced law. Plaintiffs do not, however, refer us to any cross-examination relating thereto. Plaintiffs' only reference on this question is to their offer of proof of the files of prior circuit court suits discussed above. As indicated, such files, if admissible in evidence at all, could be admitted only for the purpose of showing fraudulent intent.

Reversed and remanded for new trial. Costs to defendant.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, and KAVANAGH, JJ., concurred.

EDWARDS, J., did not sit.