**DORA MILLER and HAROLD M. DAVIDSON, and the STATE OF CALIFORNIA v. SAMUEL NELSON, Executor of the Estate of OLOF ZETTERLUND, Deceased, and other interested heirs, et al.**

35 So. (2nd) 288

April 30, 1948

Rehearing Denied May 30, 1948

January Term, 1948

Division A

*John C. Sullivan* and *Redfearn & Ferrell,* for appellants.

*Carl A. Hiaasen, McCune, Hiaasen, Fleming & Kelly,* for twenty heirs and distributees (Samuel Nelson and Nineteen others) and *Lewis H. Tribble,* for C. M. Gay, Comptroller of the State of Florida, appellees.

CHAPMAN, J.:

The State of California, by its Comptroller, Harry B. Riley, and Dora Miller and Harold M. Davidson, by separate petitions filed in the County Judge's Court of Dade County, Florida, prayed for an order declaring Olof Zetterlund to have been a resident of the State of California at the time of his death at San Gabriel, California, on the 21st day of August, 1945. Attached to the petitions were a copy of the Last Will and Testament and codicil thereto of Olof Zetterlund for probate and ancillary proceedings in said court. The State of Florida, through its Comptroller, J. M. Lee, and the devisees

and legatees of the Last Will and heirs and other interested parties filed answers and considerable testimony was adduced on the issue of whether Olof Zetterlund was a resident of the State of California or the State of Florida at the time of his death, and was the administration of the Zetterlund estate in Dade County, Florida, to be an original administration or an ancillary administration.

The County Judge hearing the testimony and considering the many exhibits introduced into evidence concluded, and so held, that Olof Zetterlund, on the 21st day of August, 1945, the date of his death in the State of California, was not a resident thereof but was a resident and citizen of the State of Florida. The petitions of the State of California, Dora Miller and Harold M. Davidson were each accordingly denied and the probate proceedings thereon would continue and proceed as an original and domiciliary administration in the County Judge's Court of Dade County, Florida. On appeal said order was affirmed by an order of the Circuit Court of Dade County, Florida, and from said order of affirmance an appeal has been perfected here.

Posed for adjudication in this Court by counsel for appellants are four questions based in a measure on the construction or interpretation of the evidence and exhibits adduced by the parties and considered or construed in the Courts below and certified here. The questions are viz:

1. Did the evidence show that Olof Zetterlund, once a resident of the State of Florida, had left the State of Florida and had gone to California on a rest trip and while in California or Oregon he formed the intention to change his residence from Florida to California, and thereafter returned to California and purchased a home in which he lived until his death?

2. Were the legatees, devisees, and heirs at law of Olof Zetterlund who appeared in this cause as petitioners for probate of the will in Dade County, Florida, and who were served with notice of the proceedings to probate the will in California, estopped to apply to the Court of Dade County, Florida, for the probate of the will in Dade County?

3. Was the executor who is named in the orignal will of Olof Zetterlund which was offered for probate in Dade County,

Florida, and who was not the executor named in the codicil to said will executed by Olof Zetterlund in the State of California and who was not related to said testator, a party with such interest as authorized him to contest the probate of said will and codicil and have ancillary proceedings instituted in Dade County, Florida.

4. Is the payment of an intangible tax or the presence of the name of a taxpayer on the intangible list in Dade County, Florida, evidence to prove domicile?

The case of Watts v. Newport, 149 Fla. 181, 6 So. (2nd) 829, involved a purported will alleged to have been made by Mrs. Letitia V. Graham. The questions presented were: (1) was the alleged will dated August 20, 1937 forged; and (2) did Mrs. Graham on the date of execution have or possess the testamentary capacity to make a will? For and against these questions considerable testimony was taken and in construing or interpreting the same we, in part, said (text 149 Fla. 185):

"To answer the question, this Court will first examine the record to determine whether or not the chancellor followed the correct rule of decision. The rule of decision is that if there is substantial competent evidence to support the findings of the probate judge and he did not misinterpret the legal effect of the evidence as a whole, his decree should be affirmed. In re: Donnelly's Estate, 137 Fla. 459, 188 So. 108; Wilkins Estate, 128 Fla. 273, 174 So. 412; Alkire's Estate, 142 Fla. 862, 144 Fla. 606, 198 So. 475; Thompson's Estate, 145 Fla. 42, 199 So. 352."

The law makes it our duty on this appeal to examine the evidence and exhibits and determine if there is substantial competent evidence to support the findings of the Probate Judge and that he did not misinterpret the legal effect of the evidence as a whole. If as a result of the examination it is found that there is no substantial competent evidence to support the findings of the Probate Judge and that he misconstrued the evidence taken as a whole, then the findings of the Probate Court must be reversed, otherwise affirmed. Our recital of the evidence is therefore restricted to the pertinent and substantial portions reflected by the record.

Olof Zetterlund was born in Sweden on December 17, 1858. He died in San Gabriel, California, on August 21, 1945, between 86 and 87 years of age. He came to America about the year 1880 and was later employed by Henry Flagler in acquiring the right-of-way for the Florida East Coast Railway Company, and about fifty years ago acquired an interest in two and one-half miles of ocean front land in then Dade County, but now in Dade and Broward Counties. During World War I he married Mrs. Jeanette Weaver, a widow, and they lived together as husband and wife until 1932, when a divorce was obtained and the former wife died during the year 1940. There were no children born to the marriage, but Mrs. Zetterlund had a daughter, Elsie Z. Weaver, by her first marriage. It is not disputed that Olof Zetterland resided continuously in Dade County, Florida, for half a century preceding the Fall of 1941. He established a home at 1702 South Bayshore Drive, Miami, Florda, where he resided for many years, but in 1936 he moved from his Bayshore home to the Oceanic Hotel in Miami Beach. In 1927 he employed Dora Miller as his housekeeper and she served as such, and in other capacities, continuously from the date of employment in 1927 until his death on the 21st of August, 1945. In 1941 he sold his Bayshore Drive home.

In the Summer of 1941 Olof Zetterlund went to a sanitarium for his health at Battle Creek, Michigan, and corresponded with his employees, Mrs. Ellen Burdet and Dora Miller, his housekeeper. On July 1, 1941, Olof Zetterlund wrote Mrs. Ellen Burdet from Battle Creek, Michigan, requesting Mrs. Burdet to induce Dora Miller to spend her vacation in Michigan rather than California. On July 9, 1941, he wrote Dora Miller in Los Angeles, California. On July 28, 1941, he wrote Mrs. James Burdet and said: "I am here for my health, but what to do I don't know. I wish to be home. I don't know how Mrs. Dora Miller lives in Los Angeles, California." On October 16, 1941, Dora Miller wrote from Los Angeles to Olof Zetterlund and, in part, said: "I would like to come home about October 25th, though I will let you know definitely when I will arrive at Miami. Please do not forget that you shall get ready to go back with me in November to

Los Angeles." In November, 1941, Dora Miller took Olof Zetterlund, then about 83 years of age, to California on a vacation trip to improve his health. Olof Zetterlund and Dora Miller, his housekeeper, resided in Los Angeles from November, 1941, until January, 1942, and then went to Santa Fe, New Mexico, where they lived until May, 1942. From May, 1942, through August, 1942, they lived at Manitou Springs, Colorado, and in September returned to Santa Fe, New Mexico, and resided there until January, 1943, and then went to Ashland, Oregon, where they remained until September, 1943. They returned in October, 1943, to Baldwin Park, California, and there lived until December 1943, and from January, 1944, until August 21, 1945, the date of his death, they lived at San Gabriel, California. The record fails to show any letters or communications personally signed by Olof Zetterlund from the date of his arrival in California in 1941, until his death in August, 1945, but that such letters, documents, communication or checks bearing his signature were each signed by Dora Miller.

On November 17, 1941, Dora Miller wrote from Los Angeles, California, to Miss Freida Elvers about Mr. Zetterlund viz: "He wants to go home and attend to it." "Please don't forget that miracles have yet to happen about his memory." On November 25, 1941, she wrote the same party in part: "I know that Mr. Zetterlund will get his perfect memory again, but it will take time. It is more than two years since he is disturbed and it will take several months for improvement. I know he will not be home by January 28th (meaning Miami Beach, Florida). On December 10, 1941, she wrote: "He is improving but slowly." On December 14, 1941, she wrote in part viz: "How I long to hasten the improvement of Mr. Zetterlund, but we have to be patient. This turmoil of war only the Presence can protect us. We just can't go home as yet as all this effort would be fruitless. He would not stay away from office at home and only away from the office he will get back to his normal way." On January 16, 1942, Dora Miller, in a letter to Miss Elvers, in part said: "Father is improving but let's say about 20% and we have 80% yet to go." On March 11, 1942, Dora Miller wrote Mrs. Burdet, Miami Beach,

Florida, from Santa Fe, New Mexico, in part viz: "He could not take care of his office as yet and we have to try to keep him away longer. He is ready to go home any day but what good would it do him or his business?"

On November 9, 1942, Dora Miller, writing from Santa Fe to Mrs. Burdet in Miami Beach, in part said: "It seems that I am at a standstill at what to do with father as he always wants to go home. We may go home after Christmas. I do not get any help from the doctors. All they have to say is that it is his age." On January 9, 1943, Dora Miller, writing from Santa Fe to Mrs. Burdet at Miami Beach, in part said: "When I think of going back to Miami, in about three months it gets hot there. Doctors urge that I have to take father away from disturbing matters. He does not remember the people at home but he surely knows that he has a hotel at Miami Beach. That's what made it so bad when we traveled, as he wanted to go to Miami. We hardly could bring him to Battle Creek as he has to have some one with him every minute, day and night, and I know he would receive plenty of dope to keep him quiet." On August 3, 1943, she wrote in part as follows; "I had to sign it as father just can't write with ink that any one could make out his name." On October 24, 1943, she wrote: "Father cannot write his name any more and the bank wants his signature. Mr. Zetterlund has begged me many times not to send him to the hospital or sanitarium. He suffers with kidney trouble since last November. A whole year already and he has not found a remedy yet. The M. D. gives him only dope, which makes it worse." In December, 1943, she wrote that, "Father gave me a power of attorney of the company. Father would have to sign papers and he does not sign at all at the present." In January, 1944, she wrote: "Father could write in the Summer but not now. I hold his hand but it does not look like his signature. Father cannot sign his name." In September, 1944, she wrote that "Mr. Zetterlund at the present has difficulty in walking and the doctor advised to keep him off his feet as much as possible." The capital stock returns of the two corporations owned by Olof Zetterlund viz: Hallond Land Company and Elsinore Beach Corporation, were filed with the Secretary of State of

the State of Florida on September 11, 1944. Dora Miller affixed the signature of Olof Zetterlund and herself to each of these returns. The same were sworn to by Dora Miller and Olof Zetterlund. The address of each as President and Secretary of the corporations was given as 528 Collins Avenue, Miami Beach, Florida. The permanent address of Dora Miller and Olof Zetterlund was given as Miami Beach, Florida. Her testimony is to the effect that Mr. Zetterlund changed his domicile from the State of Florida in June, 1943, to the State of California. It is not disputed that she was some 33 years younger than Zetterlund. The power of attorney from Olof Zetterlund to Dora Miller is dated January, 1944, and it recites that Zetterlund was a resident of the State of California.

Counsel for appellants emphasize given portions of the testimony of Dora Miller: that Zetterlund told Dora Miller and Ellen Burdet that he loved California and after the purchase of a home in January, 1944, in San Gabriel, California he told Dora Miller, "I love this house very much. It is a small house. You can take care of my house and take care of me as long as I live. This shall be my home and as long as you will take care of me and be good to me as you have always done, and when I leave this world the same shall be your house. I would like to live here as long as I live. When the time comes I am selling out everything in Florida." On January 26, 1944, in the signing of the power of attorney to Dora Miller it recited: "I, Olof Zetterlund, of San Gabriel, County of Los Angeles . . . " Mr. Zetterlund decided when they were in Ashland, Oregon, that he was going to California to make it his home and said: "This is the best climate we have seen. When we go back, I am going to buy a home and live there as long as I live."

Ellen Burdet testified that Mr. Zetterlund told her that he would be happy to go to California because the climate was better than Miami Beach; that he would love to go out and that he was very happy and he wanted to buy a home and he wanted to be comfortable. He told George Sennett in December, 1943, that he intended to make California his home and that he would love to spend the rest of his days in California and that he bought a home and moved into it around the 1st

of January, 1944. His speech had failed him but he knew what he was doing and how to handle his business; that in the last years of his life no one could dominate or influence him. Philomena Sennett, wife of George Sennett and sister of Dora Miller, assisted in the purchase of the home for Mr. Zetterlund. Mr. Zetterlund signed a codicil to his will under date of August 3, 1945, in California and died approximately three weeks thereafter.

Circuit Judge Holt, of Dade County, Florida filed a concurring opinion to the order of affirmance and listed certain facts sustaining Mr. Zetterlund's domicile in Florida at the time of his death rather than the State of California, viz:

"1. Deceased had resided in Florida for nearly fifty years.

"2. The sole purpose of his trip to California in 1941 was occasioned by his health. (He died August 21, 1945).

"3. Numerous letters in evidence indicated his continuous and abiding intention to return to Florida.

"4. All of his property and the source of all of his income was located in Florida.

"5. The *only* property possessed by the deceased in the State of California at his death were two suits of clothes, some shirts, socks and shoes. He did not own any real property in that State.

"6. His corporate stock in various corporations in which he was interested were situated in Florida.

"7. His last Will and Testament was in Florida.

"8. The bank account which he used throughout his stay in California was situated in Florida (First National Bank of Miami) where he was listed as a resident of Miami Beach.

"9. The telephone directory and the business and city directory listings of deceased until his death were in Miami Beach, Florida, and there were none in the State of California.

"10. All of the personal effects of deceased, including clothes, heirlooms, etc., were situated in Florida, and never in California.

"11. Throughout the entire period he maintained a business office in Miami Beach, Florida.

"12. His stationery listed his address as Miami Beach, Florida.

"13. He held various offices in his Florida corporations until June, 1945, and drew salaries as such until that time.

"14. Corporate returns to the State of Florida of two of his corporations stated his Post Office address to be Miami Beach, Florida.

"15. Intangible personal property taxes of deceased were paid in Florida.

"16. The absence of a communication to his office in Florida or to his attorneys or agents in Florida announcing any change in residence.

"17. The deceased retained a room in the Oceanic Hotel which he or his corporation owned.

"18. The deceased maintained a bank safe deposit box in Florida the entire time he was in the State of California.

"19. All of the living expenses of deceased were paid by check drawn on the First National Bank of Miami, Florida.

"20. He arrived in California a sick man and remained in such condition until his death, consequently did nothing except rest and attempt to regain his health.

"21. Made communications in which he stated his intention to return to the State of Florida."

Mr. Zetterlund was in bad health in the Summer of 1941, and for that reason went to a sanitarium at Battle Creek, Michigan. He went to California in the Fall of 1941 with Dora Miller to regain his health. They left California for Santa Fe, New Nexico, for a higher elevation or altitude, and in the Summer went from Santa Fe to Manitou Springs, Colorado, then back to Santa Fe and from there to the State of Oregon. In June or September of 1943 Mr. Zetterlund, when in the State of Oregon, decided on California, as his future domicile and a home was purchased by him in 1944 and title taken in Dora Miller. It is not disputed that Mr. Zetterlund had been suffering from numerous senile ailments and under treatment by physicians since 1941. Talking and writing were difficult for him. Valuable property and lifetime accumula-

tions located in the Miami area were never transferred to California. Accounts with banks in both New York City and Florida were never changed. He paid through Dora Miller in 1944 an intangible tax on his Florida corporations to the Comptroller of Florida and gave his permanent address and that of Dora Miller as Miami Beach, Florida. The soundness of Mr. Zetterlund's mind due to senile ailments from 1941 to 1945 was not definitely established. A person of unsound mind does not have the ability to acquire a new domicile. Mr. Zetterlund gave Dora Miller a power of attorney reciting therein that he was a resident of California, and shortly thereafter was by a California court adjudged an incompetent.

An adult of unsound mind, who by reason of his mental status cannot acquire a new domicile for himself, cannot have his domicile changed for him by being in fact carried by another person, no matter how closely related to him, to another place. One's mind may be so weak, whether by nature or by extreme age, as to be unable to form a settled intent to change his home and in that case cannot change his domicile. Under these circumstances a person without legal proceedings taking charge of the dependent person cannot change his domicile. Beale on Conflict of Laws, Volume One, page 225.

Beale on Conflict of Laws, pages 132-133, states the rule of domicile thusly: The domicile of origin is assigned to a person by operation of law, without any concurring will of his. He cannot by his own will or act change this domicile until he becomes *legally* capable by the exercise of his own will. When *legally* capable it is within his power to change his domicile. A person who is a *normal* adult may change his domicile and thereby acquire a domicile of choice. As the Domicile of origin is presumed to continue, the burden of proof rested on the petitioners below to establish (1) that Mr. Zetterlund abandoned his domicile of origin in Florida; and (2) that it was his intention to change his domicile from Florida to the State of California; and (3) that Mr. Zetterlund had and possessed sufficient mental capacity to form and have the requisite intent to change his domicile from the State of Florida to the State of California. The rule supra is not in conflict with our previous holdings in Warren v. Warren, 73 Fla.

764; 75 So. 35, L.R.A. 1917E 490; Gipson v. Gipson, 151 Fla. 587, 10 So. (2nd) 82, and similar cases. See Texas v. Florida, 306 U.S. 398, 59 S. Ct. 563, 83 L. Ed. 817, 121 A.L.R. 1179, Riley v. New York Trust Co., 315 U.S. 343, 62 S. Ct. 608, 86 L. Ed. 885

Pertinent language of the order of dismissal is viz: "and having carefully considered the petitions filed, and each and every of the answers filed, the testimony and exhibits, and after a due consideration thereof, finds that Olof Zetterlund, deceased, was at the time of his death, on to-wit, the 21st day of August, 1945, a resident and citizen of the State of Florida and the County of Dade, and that his said last Will and Testament was lawfully admitted to probate in Dade County, Florida on September 6, 1945." Observing the rule enunciated in Watts v. Newport, supra, it is our conclusion that there was substantial competent evidence to support the findings of the probate Judge and that he did not misinterpret the legal effect of the evidence as a whole.

We have not overlooked the four questions posed for adjudication by counsel for appellants, which have been exhaustively and thoroughly presented by their briefs and ably argued at the bar of this Court. We fail to find error in the record.

Affirmed.

THOMAS, C. J., TERRELL and SEBRING, JJ., concur.