111 So.2d 267 (1959)
A.L. MAILMAN and J.L. Mailman, Petitioners,
v.
Ray E. GREEN, as Comptroller of the State of Florida, Respondent.
No. 29655.
Supreme Court of Florida.
April 22, 1959.
Carl A. Hiaasen, McCune, Hiassen, Kelley & Crum, Fort Lauderdale, for petitioners.
Richard W. Ervin, Atty. Gen., Fred M. Burns and Robert R. Crittenden, Asst. Attys. Gen., for respondent.
THOMAS, Justice.
This case is being further heard upon the motion of the petitioners for a peremptory writ of mandamus notwithstanding the respondent's return to the alternative writ.
In the petition it was represented that one Olof Zetterlund, a resident of Florida, died testate in the year 1945. Domiciliary probate proceedings with reference to his estate were begun and completed in Dade County. Miller v. Nelson, 160 Fla. 410, 35 So.2d 288. Reports of the representatives of the estate were timely made under the Federal estate tax law and *268 Chapter 198, Florida Statutes 1941, and F.S.A. A representative of the estate paid to the respondent, 18 June 1947, $26,415.40 for taxes as required under Sec. 11, art. IX of the Constitution, and Chapter 198, supra. The amount of tax paid was based on a return to the Federal government showing a tax due of $230,953.29.
The tax was contested in the Tax Court of the United States and eventually, 11 April 1958, a judgment was entered in which it was declared that there had been an overpayment of $84,578.55 made within three years of the presentation of the claim. The court also decided that the correct amount of the credit for state inheritance tax was $10,209.97.
The representative of the estate then requested of respondent a refund of $16,205.43, being the amount of $26,415.40 already paid him less the correct credit of $10,209.97, fixed by the Tax Court, and further demanded interest at the rate of six percent per annum from the date of the original payment.
The respondent denied liability for the interest, but on 8 May 1958 refunded the principal amount of $16,205.43 which was accepted without prejudice to the right to resort to the courts for recovery of the interest.
So, the only point to be considered in this litigation is whether or not petitioners, assignees and present holders of the claim, are entitled to interest on $16,205.43 from 18 June 1947 to 8 May 1958.
Under Sec 11. Art. IX of the Constitution of Florida, F.S.A., as it has read since 1930, no tax against estates has been permitted except that the legislature could impose such a tax not exceeding the amount which by law of the United States may be "credited against or deducted from any similar tax * * * levied by the United States" and the power of the legislature in this respect was declared to exist "only so long as * * * a similar tax is enforced by the United States against Florida * * * Estates * *." Thus the power of the legislature to impose such a tax and the amount of the tax to be levied were controlled by relevant Federal law. But, of course, the state's right to its share of the tax is not lost if the taxpayer fails to obtain a credit on the Federal tax. Wells v. Gay, Fla., 58 So.2d 690. As a matter of procedure, then, a representative of an estate would, upon making a return showing taxes due to the Federal government, pay to the Comptroller the prevailing percentage to which the state was entitled and claim that sum as credit on the Federal tax.
It is plain that the actions of the Comptroller with reference to the handling of the fund in question were ancillary to the actions, legislative and judicial, of the Federal government. The Congress controlled the life of the tax and the proportion of it to be received by the state while the Federal Tax Court adjudicated the dispute that arose about its amount. There is no indication in the record that any attempt was made to resort to the provisions of Sec. 198.27, Florida Statutes 1941, and F.S.A.
It should now be remembered that strictly speaking this was not an action against the state for recovery of money but one against the Comptroller predicated on the assertion that the petitioners had a clear legal right to coerce the performance by him of a duty, namely, the payment to them of the interest described. Our study of the briefs and our research have not revealed a firm foundation for the contention.
We have already commented upon the position of this official in relation to the part played by the Federal government which convinces us that he was not free to exercise discretion or judgment on behalf of the state. Furthermore, we have not found authority in the statutes or decisions *269 for the payment by the Comptroller of interest on the overpayment even had the amount been certain before entry of the judgment of the Federal Tax Court.
The only section in Chapter 198, supra, that appears pertinent to the present case, Sec. 198.29, provides for refund of overpayment and overpayment of interest "thereon" but it is silent about payment to the taxpayer by the Comptroller of interest on the tax.
At the suggestion of the petitioners we have examined also Sec. 215.26, Florida Statutes 1943, and F.S.A., a part of the chapter dealing with "Financial Matters, Generally" and here we have found no provision for payment of interest on refunded taxes.
To repeat, the amount ultimately to be paid was throughout the litigation in doubt. Whether the Comptroller should refund any or all of it could not have been divined by that officer and that being the case, we have found no room for the play of equitable principles relative to unjust enrichment of the state at the expense of its citizens, or failure of the state to deal fairly with them.
Within what appears on the face of it to have been a reasonable time after the Tax Court fixed the amount, 27 days, the Comptroller paid to petitioners the exact amount to which they were entitled. This, in our opinion, was all he was required to do and he could not have done it earlier. That being our conviction, we cannot accept the argument that the state should be required to pay for interest an amount computed from the day of the original payment.
The money was not inequitably withheld by the state and used by it to the detriment of petitioners. The matter was simply in suspense, pending settlement by a court of a dispute to which the state was not directly but only vicariously interested.
The petitioners contend in effect that there was implied liability on the part of the state to pay the interest they claim and they rely principally upon two decisions of this court to support their position: Treadway v. Terrell, 117 Fla. 838, 158 So. 512, and Florida Livestock Board v. Gladden, Fla., 86 So.2d 812. Aside from the dissimilarity of procedure in those cases, one having been a petition for prohibition and the other an outright action for damages while the present case is one in mandamus, we think they cannot constitute authority for a decision in the instant controversy that there was an "implied liability" of the state for interest as petitioners insist. In the earlier cited case, the court held that in view of statutes permitting actions against the State Road Department and authorizing the department to enter contracts for construction and maintenance of roads, a claim for interest could be a legal incident to a claim for money due for work done. In the later case, action had been brought against the Florida Livestock Board for destruction of animals. Judgment was entered for the plaintiff and interest was allowed on the judgment. A statute expressly provided that the board could contract and could be sued. By Sec. 22, Art. III of the Constitution, the legislature may authorize actions against state agencies. The court held that the decision in Treadway v. Terrell, supra, controlled. The similarity of the salient facts in the two cited cases is as plain as the dissimilarity of those facts to the ones in the present case.
We conclude that the motion should be denied so the alternative writ is quashed, and the petition is dismissed.
TERRELL., C.J., and ROBERTS, DREW and THORNAL, JJ., concur.