RAWLS, Judge.
On July 18, 1961, the County Judge of Taylor County, adjudicated Florence M. Mickler an incompetent upon a petition filed by the appellee, Eula L. Hendricks, who on August 29, 1961, filed a petition with said County Judge praying that she be appointed guardian of the person and property of Florence M. Mickler, an incompetent, and letters of guardianship were issued to her on said date. Appellant,[1] a distant cousin of Mrs. Mickler, filed a petition for revocation of guardianship, in which she alleged that she was Mrs. Mickler’s closest living relative, and that procedural defects existed in the initial appointment of appellee as guardian of the person and property of Mrs. Mickler. From an order denying the petition for revocation, appellants have prosecuted this appeal.
The critical question presented on this appeal is the proper venue for appointment of a guardian, it being appellant’s contention that venue for such purpose on the date of appointment was lodged in Hernando County and appellee’s contention that venue was lodged in Taylor County. F.S. § 744.11, F.S.A., provides:
“(1) If the incompetent is a resident of this state, the venue shall be in the county where the incompetent resides. * * * [Emphasis supplied.]
“(4) Whenever the domicile of an incompetent is changed to another coun *207 ty, the guardian of said incompetent may, by filing a petition, in which the facts concerning said change of domicile are stated, have the venue of said guardianship changed to the county of the acquired domicile.”
So, the question resolves itself upon the factual proof as to Mrs. Mickler’s residence on August 29, 1961, that being the date of appointment of her guardian.
Florence M. Mickler, age 81 at the time of these proceedings, was for a long time a resident of Brooksville, Florida. Evidence presented in this cause reflects, without contradiction, that she moved to Brooksville in 1904 for the purpose of teaching school and taught one of the witnesses in 1920 or 1921; that to two witnesses she was a long time friend of more than fifty years, and during such time Mrs. Mickler was a resident of Brooksville; that she married in Brooks-ville, and her husband while living there served as “Clerk of the Court;” that she owned and occupied her home in Brooksville for many years and was occupying same on July 9, 1961, another crucial date in the pattern of these events.
The appellee acknowledged that Mrs. Mickler was a resident of Brooksville for the last thirty-six years, but insists Mrs. Mickler changed her residence to appellee’s home in Perry, Taylor County, Florida. The occasion for this change of residence as related by appellee is that on Sunday, July 9, 1961, Mrs. Mickler telephoned her and stated: “Come and get me, they are going to send me to the crazy house.” Appellee drove from Perry to Brooksville and stayed in Brooksville with Mrs. Mickler until Wednesday, July 12, during which time she “got the alcohol out of her”, “took her to the beauty parlor” and brought her back to appellee’s home in Perry. While in Brooks-ville on this occasion appellee visited the County Judge of Hernando County and discussed with him briefly Mrs.’ Mickler’s affairs.[2] In addition, appellee testified that Mrs. Mickler had for many years visited her every summer for a month or six weeks.
It is appellee’s position that a few days after returning to Perry Mrs. Mickler made her decision to become a resident of Taylor County, Florida, and that this decision was founded upon her fears that “They were going to send her to the crazy house.” On July 18, 1961, appellee instituted proceedings in Taylor County resulting in Mrs. Mickler’s being adjudicated incompetent by reason of senile dementia.
 A change of legal residence may be accomplished by a good faith intention to acquire a new domicile coupled with actual removal. The effectiveness of such change is dependent upon the concurrence of both fact and intention. The governing principles have often been quoted as follows :[3]
“In Phillmore’s Law of Domicile (page 18), quoted with approval by this court in Smith v. Croom, 7 Fla. 81, it is said that ‘domicile’ answers very much to the common meaning of our word ‘home.’ Used in this connection, ‘legal residence’ or ‘domicile’ means a residence at a particular place, accompanied with positive or presumptive proof of an intention to remain there for an unlimited time. The term ‘domicile’ was defined by the Roman law to mean:
“‘In whatsoever place an individual has set up his household goods and made the chief seat of his affairs and interests, from which, without some special avocation, he has no intention of departing; from which, when he has departed, he is considered to be away from home, and to which, when he has returned, he is considered to have returned home.’ ”
*208 It is uncontroverted that Mrs. Mickler’s “home”, domicile and residence was in Brooksville, Hernando County, on July 10, 1961. This record is devoid of any testimony by Mrs. Mickler as to her intentions to abandon this residence. The sole evidence going toward a change of residence by Mrs. Mickler is the testimony of appellee, .which when viewed in the light of appellee’s own appraisal of Mrs. Mick-ler’s mental and physical condition during the period of time immediately preceding her judicial determination of incompetency fails to meet the burden of proof requisite to establish that Mrs. Mickler made a change in her residence. This testimony is: “ * * * She was in the condition, physically and mentally — I mean, she just didn’t know how to express where they were going to send her * * * and you could see that she [Mrs. Mickler] needed help. She was weak and I had the doctor come around to see her and she had just been out of the hospital * * *. She told me she wanted to stay and wanted me to take care of her.” Intention of such a change of residence must be shown by positive overt acts [4] and one must have the necessary mental capacity to form such an intention.[5] Construing the foregoing together with other material testimony by appellee, it is apparent that this record is devoid of those positive overt acts which are necessary to establish a change' of legal residence on the part of Mrs. Mick-ler.
Notwithstanding the proper distinctions in point of law between the terms “jurisdiction”, “venue”, “domicile”, and “residence” as words of art, it is well known that even the most erudite savants of the law sometime fall into the rather common error of using the terms “jurisdiction” and “venue” interchangeably, and likewise err in the use of the terms “domicile” and “residence”. The tendency to thus err occurs no less frequently among our brethren of the legislative branch of government as with ourselves. It is because of this among other fallacies of expression that courts of appeal, in the calmness of deliberation afforded by the appellate process, exercise the power of interpreting the legislative intent and of construing prior judicial decisions.
There is a vital distinction between jurisdiction of a court over a particular subject matter — controversies involving a specific field of law — once it has obtained jurisdiction over the person — -as compared to the power of the court to exercise jurisdiction over the subject matter where it lacks jurisdiction over the person, and it is the latter that pulls the cart. There are very obvious reasons why jurisdiction over the person upon the question of his incompetency is vested by statute (F.S. § 394.22, F.S.A.) in the county judge’s court of any county in the state where he “resides or may be foundand there are equally compelling reasons why jurisdiction over the person of an incompetent, for the purpose of guardianship proceedings, should be vested exclusively in the county where the incompetent resides, and we think that was the legislative intent. We interpret the word[1] “venue” as used in F.S. § 744.11(1), F.S.A., as denoting a limitation upon jurisdiction to entertain guardianship proceedings over the person and property of an incompetent, and we interpret the word “resides” as-used therein to mean the last place of legal' residence of the incompetent in this state prior to the adjudication of incompetency.. We also hold that the word “domicile” as-used in F.S. § 744.11(4), F.S.A., supra, has reference to the legal domicile of the' incompetent; and that the term “venue” as. used therein has the same connotation as we ascribe to it in construing subparagraph (1), of the statute.
In so holding we are not unmindful of the line of decisions holding that persons sui juris are deemed to have *209 waived the privilege afforded by venue statutes unless they timely assert it. We believe, however, that the rule has no application to the rights and powers of those dealing with the persons and estates of incompetents, the protection of whose interests forms the underlying thread of all legislation touching upon them. In furtherance of that objective, it seems evident that the legislative intent was to rigidly fix jurisdiction in guardianship proceedings in the forum where in all likelihood the incompetent’s estate is located. Indeed, the rationale of the provisions of F.S. § 744.11(4), F.S.A., affording a means for transferring the guardianship to another place upon a proper showing of fact, is that the legislature recognized the possibility of circumstances providing an exception to the requirements of subparagraph (1) of said section.
We have reviewed the case of In re De Hart[6] in which the District Court of Appeal, Second District, held that venue for guardianship proceedings could under certain circumstances be waived. We distinguish the De Hart decision from the instant cause upon the facts. There, the next-of-kin, sui juris, had filed his waiver to be appointed as guardian; here, no notice was given to the next-of-kin, nor any waiver executed; there, the County Judge of the minor’s resident county authorized the removal of the minor to the County where guardianship proceedings were had; here, although the County Judge of the incompetent’s resident county was consulted by the appellee, she testified that “She just wanted to get some information” from the Her-nando County Judge about Mrs. Mickler’s affairs. It is significant that no evidence reflects that the Hernando County Judge authorized the removal of Mrs. Mickler from her place of residence.
Extensive space in the parties’ briefs has been devoted to the sufficiency of the incompetency proceedings and the ultimate effect that same had upon the instant cause; however, the petition for revocation of guardianship initially filed in this cause did not attack the incompetency proceedings and the lengthy dispute between the parties was directed toward the effect such incompetency proceedings had upon the ultimate question, that being the revocation of guardianship. In view of our above conclusion we, therefore, pretermit any consideration of those matters directed toward the incompetency proceedings.
The trial judge is directed to grant the relief prayed for in appellant’s petition for revocation of guardianship.
Reversed.
STURGIS, Acting C. J., concurs.
WIGGINTON, J., dissents.

. She was joined in this petition by’ appellant Rudy J. Inman, another distant cousin, on January 29, 19C2.

. Appellee testified that she just wanted to get some information from the Her-nando County Judge and did not consult him about guardianship.

. Wade v. Wade, 93 Fla. 1004, 113 So. 374, 375 (1927) ; Bloomfield v. City of St. Petersburg Beach, 82 So.2d 364, 368 (Fla. 1955).

. Smith v. Croom, 7 Fla. 81 (1857).

. Miller v. Nelson, 160 Fla. 410, 35 So. 2d 288 (1948); Matthews v. Matthews, 141 So.2d 799 (Fla.App.1st, 1962).

. In re De Hart, 114 So.2d 13 (Fla.App.2d, 1959).

. Polar Ice Cream & Creamery Company v. Andrews, (Pla.App.1962) 146 So.2d 609.