454 P.2d 772

*In the Matter of the* ESTATE *of* D. P. PECK, a/k/a David P. Peck, Deceased.

W. M. BEAUCHAMP, Administrator of the Estate of D. P. Peck, Deceased; and Carl Andrew Chambers, Appellees,

v.

John T. CHAMBERS, Appellant.

No. 8622.

Supreme Court of New Mexico.

April 30, 1969.

Rehearing Denied June 3, 1969.

Jack Underwood, Albuquerque, for appellant.

Merrill L. Norton, Lovington, for W. M. Beauchamp.

Heidel, Swarthout & Samberson, Lovington, for Carl A. Chambers.

## OPINION

TACKETT, Justice.

This action was originally filed on February 13, 1967, in the District Court of Lea County, New Mexico, for the purpose of probating the estate of D. P. Peck, a/k/a David P. Peck, deceased, who, according to the petitioner, died intestate a resident of Lea County, New Mexico.

On March 13, 1967, there was filed in the same action by petitioner W. M. Beauchamp a petition for determination of heirship, alleging that appellant John T. Chambers was entitled to a one-third interest in and to the Peck estate. After a lengthy trial, a decree was entered on August 18, 1967, which determined that appellant's interest in the estate was a one-third interest and appellant John T. Chambers appeals.

The pertinent issues to be determined in this case are: (1) Was David P. Peck a legal resident and domiciliary of Dallas, Dallas County, Texas? (2) Did he have the mental capacity to form an intent with respect to a change of residence? (3) At the time of his death, did he die testate or intestate?

A brief résumé of the facts involved in this case is necessary for an orderly understanding of the problems facing this court. The decedent David P. Peck made application to homestead certain lands in Lea County, New Mexico, in 1909. He built a home thereon, drilled a water well, made other improvements, and established residence in New Mexico. He maintained that residence until about 1912, when he appar-

ently became insane, leaving the land he had homesteaded in New Mexico, returned to his parents' home in Kingman, Kansas, and was committed to a Kansas hospital for the insane on December 24, 1914. His father was thereupon appointed guardian and filed application for reinstatement of the homestead entry. He was allowed additional time within which to make further showing, subsequently perfecting the homestead claim by proving that David P. Peck was a legal resident of New Mexico and became insane prior to the time he left the homesteaded land. It was disclosed that the entryman was adjudged by a Kansas court to be of unsound mind on December 24, 1914, and that he was found to be mentally unsound for about two years prior to that time, which fixed the period of incompetency beginning sometime in 1912, or prior thereto. This new application for reinstatement was allowed under Title 43 U.S.C.A. §§ 164, 169 and 172. David P. Peck remained in the Kansas mental institution until July 30, 1963, at which time he was removed from that institution and taken by his nephew, John T. Chambers appellant herein, to Dallas, Texas, and placed in a rest home where he died on September 4, 1966. On May 12, 1964, while a patient at the rest home in Dallas, he executed a purported last will and testament leaving his entire estate to his nephew John T. Chambers, which will excluded Carl Andrew Chambers, son of a predeceased nephew Carl N. Chambers, Jr., and Charles Chambers, a nephew. Guardianship proceedings were had in the District Court of Lea County, New Mexico, in which that court determined that David P. Peck died intestate and that each of the three heirs above mentioned were entitled to one-third of the estate.

Query: Was David P. Peck a resident and domiciliary of Dallas, Dallas County, Texas?

■■■■ At the time of the commitment to the mental institution in Kansas, David P. Peck was a resident of the State of New Mexico, and such domicile continued as long as he was unable to form an intent to change his domicile. From the time of his commitment in 1914 until his death in 1966, he had never been adjudicated competent. A mentally incompetent person is presumed to be incapable of changing his domicile. See Annot. 96 A.L.R.2d 1236. Another presumption is that where a person is once found to be mentally incompetent, the mental incapacity continues until shown otherwise. Stanley v. Campbell, 157 Fla. 891, 27 So.2d 411 (1946); Belk v. Colleas, 207 Ga. 328, 61 S.E.2d 464 (1950); Davis v. Davis, 223 N.C. 36, 25 S.E.2d 181 (1943); In re Peters' Estate, 43 Wash.2d 846, 264 P.2d 1109 (1953).

■■■■ Since a change of domicile requires both physical presence in the new locality and an intention to abandon the old domicile and to make a home in the new dwelling place without a present intention to leave it, an adult who is incapable of entertaining an intent or making a choice necessarily lacks the capacity to change his domicile voluntarily and by his own act. Likewise, an adult who has been judicially determined to be a mental incompetent at the time he departed from his previously established domicile for a new residence, is presumed to be incapable of acquiring a domicile of choice, absent an affirmative showing that he in fact had sufficient mentality to choose a new domicile, and his domicile continued to be what it was when he became incompetent. Annot. 96 A.L.R.2d 1236 at 1243–1244.

In re Sherrill's Estate, 92 Ariz. 39, 373 P.2d 353 (1962), it is there stated:

"The legal residence of an adult competent person once established continues until it is superseded by a new one. Valley Nat'l Bank of Phoenix v. Siebrand, 74 Ariz. 54, 243 P.2d 771. The domicile of a person who becomes insane remains where it was established at that time. Commonwealth v. Kernochan, 129 Va. 405, 106 S.E. 367, 30 A.L.R. 601; Miller v. Nelson, 160 Fla. 410, 35 So.2d 288; Hayward v. Hayward, 65 Ind.App. 440, 115 N.E. 966. * * *"

Thus, in McCampbell v. McCampbell, 13 F.Supp. 847 (D.C.Ky.1936), applying Kentucky law, it was held that an incompetent, who left the state of his domicile two years after he had been adjudged insane, took up residence in South Africa where he enlisted in the British military forces, later returned to his state of origin, where an order was subsequently entered appointing a committee for him to inquire into his mental condition, pursuant to the judgment entered thirty-five years previously adjudging him insane, and who apparently still labored under the handicap which resulted in the original adjudication, had to be considered as lacking the capacity to expatriate himself or to acquire a new domicile during his residence abroad. Compare, White's Guardian v. Martin, 2 Alaska 495 (1905).

In Miller v. Nelson, 160 Fla. 410, 35 So. 2d 288 (1948), it was held that an 84-year-old man, who was suffering from senility had difficulty in talking and writing and eventually had to rely on another to sign his name for him, had been adjudged an incompetent by a court of a sister state to which he had moved shortly before his death, suffered from such unsoundness of mind as to lack the capacity to choose a new domicile, the court observing that an incompetent's mind may be so weak as a result of extreme age as to make him incapable of forming a settled intent to change his home or his domicile. Compare, In re Estate of Spengler, 282 Ill.App. 607 (1935); and In re Estate of McCormick, 260 Ill.App. 36 (1931), rev'd on other grounds, McCormick v. Blaine, 345 Ill. 461, 178 N.E. 195, 77 A.L.R. 1215.

Similarly, in Sullivan v. Kenney, 148 Iowa 361, 126 N.W. 349 (1910), it was there held that probate of a foreign will, which had been made by an aged testator shortly before his death in California, to which state he had been removed by his daughter, was denied on the ground that a California court, which had admitted the will to probate, lacked jurisdiction to do so because the testator was not domiciled there when he died, the court being of the opinion that he lacked the mental capacity at the time he was taken to California, and while he lived there, to change his domicile from Iowa to California. See also, Couyoumjian v. Anspach, 360 Mich. 371, 103 N.W.2d 587 (1960); Federal Trust Co. v. Allen, 110 Kan. 484, 204 P. 747 (1922); In Re Collins' Estate, 11 N.J.Misc. 233, 165 A. 285 (1932).

In re Armijo's Will, 57 N.M. 649, 261 P.2d 833 (1953), it is stated:

"The admitted standard of testamentary capacity is (a) an understanding of the nature of the transaction, i. e., making a will; (b) a general comprehension of the nature and extent of one's estate; and (c) a recollection of the natural objects of one's bounty.

"*    *    *    *    *    *

"* * * If a person has so lost touch with reality as to be unable to understand the true uses and meaning of property, then we say that such a person lacks one essential quality constituting testamentary capacity. * * *"

In this connection, it is to be noted that in the instant case appellant admits in his brief in chief, and the record also reveals, that David P. Peck was not aware of the nature and character of his estate to the fullest extent.

There was a stipulation between counsel in the guardianship proceedings in Texas, under which John T. Chambers was appointed guardian of the estate of decedent, that decedent had no property in the State of Texas. A letter from Dr. E. Clayton Kahler of Dallas, attached as an exhibit in the Texas guardianship proceedings, stated that he had "examined Mr. David P. Peck on August 1, 1963, and found him to be of unsound mind and unable to manage his personal affairs." On September 18, 1963, the Probate Court of Dallas County, Texas, entered an order appointing John T. Chambers guardian of the person and estate of David P. Peck, reciting that Mr. Peck was non compos mentis.

The record further reveals that David P. Peck could not have formed an intent to change his domicile voluntarily due to his mental condition, which was of some 54-years duration and, upon his transfer in 1923 to the Larned State Hospital in Kansas where he was confined for approximately 40 years, the admission diagnosis was "dementia preacox, paranoid type." Dr. D. H. Davis, the psychiatrist in charge of the Kansas institution, testified that Peck's mental illness was incurable and his condition was chronic.

The record also reveals that on August 23, 1929, Dr. John A. Dillon, the then superintendent of the Larned State Hospital in Kansas, stated in regard to D. P. Peck that "in all probabilities he will be confined to this or a similar institution for the rest of his life."

Appellant admits that the probate or county court, Dallas County, Texas, admitted the Peck will to probate and that the same is now on appeal from that court. Under Texas statute, Rule 335, Texas Rules of Civil Procedure, it is provided that an appeal suspends the decision, order, decree or judgment of a probate or county court. Thus, we do not have a final decision of the Texas court.

A disqualification of all three judges in the Fifth Judicial District, New Mexico, was filed on April 27, 1967, but appellant's attorney thereafter requested and obtained from Judge Nash of the Fifth Judicial District a continuance of the trial date. The attorney then filed a subsequent motion for continuance which was granted. The action following the filing of the affidavit of disqualification effectively waived any right claimed by appellant. State v. Hester, 70 N.M. 301, 373 P.2d 541 (1962); State v. Garcia, 47 N.M. 319, 142 P.2d 552, 149 A.L.R. 1394 (1943); and State ex rel. Lebeck v. Chavez, 45 N.M. 161, 113 P.2d 179 (1941).

As shown by the record, the findings of the trial court are supported by substantial evidence. Therefore, based on the findings of fact and the record in this case, we are of the opinion that David P. Peck did not have the mental capacity to form a voluntary intent to change his domicile; that he died intestate; and that at the time of his death he was a legal resident of the State of New Mexico.

The decision of the trial court will be affirmed.

It is so ordered.

COMPTON and CARMODY, JJ., concur.