717 A.2d 432 (1998)
315 N.J. Super. 189
In the Matter of Rose JACOBS, an Alleged Incompetent.
Superior Court of New Jersey, Chancery Division, Probate Part, Monmouth County.
March 18, 1998.
*433 Peluso & Staufenberg, Shrewsbury (Lynn E. Staufenberg, appearing), for plaintiff.
Theresa M. Simonson, Whiting, for defendant Harvey Wartell.
Jonathan Rudnick, Hazlet, court appointed counsel for Rose Jacobs, an alleged incapacitated person.
FISHER, P.J. Ch.
This court is called upon to determine the extent to which a person, alleged to be incapacitated within the meaning of N.J.S.A. 3B:12-25[1], may choose a new domicile. The particular question is whether Mrs. Rose Jacobs, alleged to be incapacitated, is now domiciled in New Jersey. If she is, then this guardianship action may proceed; if not, it must be dismissed.
Mrs. Jacobs is 85 years old. She has two children: Miriam Russo (Miriam), who commenced this action and Harvey Wartell (Harvey), who seeks dismissal asserting that Mrs. Jacobs is domiciled in Florida. Neither questions that Mrs. Jacobs was domiciled in Florida at the time her husband died in 1989. She then intermittently resided in Florida and New York until 1991 when she permanently located to New York to live with Harvey. In 1994, Harvey retired and moved, with Mrs. Jacobs, to Florida where she remained until October 1, 1997. While it may be unclear whether Mrs. Jacobs ever made a change in domicile from the time her husband died until October 1, 1997, there is no doubt that she never became domiciled in New Jersey until, if Miriam's position is sustained, October 1, 1997 or sometime thereafter.
Harvey's motion to dismiss for lack of jurisdiction requires a consideration of whether the events which occurred on and after October 1, 1997 should be viewed by the court as causing a change in Mrs. Jacob's domicile. The location of her domicile is of critical importance since a court should not exercise jurisdiction over an alleged incapacitated person solely on the basis of that person's residence or current location. As a general matter, such an action should be commenced only where the alleged incapacitated person is actually domiciled. See, Lamar v. Micou, 112 U.S. 452, 5 S.Ct. 221, 28 L.Ed. 751 (1884); In re Estate of Gillmore, 101 N.J.Super. 77, 90, 243 A.2d 263 (App.Div. 1968), certif. denied 52 N.J. 175, 244 A.2d 304 (1968). A person can have many residences but only one domicile. Kurilla v. Roth, 132 N.J.L. 213, 215, 38 A.2d 862 (Sup.Ct.1944). *434 By insisting upon the alleged incapacitated person being domiciled within the forum jurisdiction, the opportunity for conflicting rulings by courts of different states is practically eliminated.
As noted above, Mrs. Jacobs should be viewed as a domiciliary of another state (probably Florida) unless, in some way, she became domiciled in New Jersey on or after October 1, 1997. At that time she was sent by Harvey from Florida to New Jersey to stay with Miriam. She did not pack all her belongings; as Miriam contends, she was sent to New Jersey with only two days' worth of clothing. She did not change any bank accounts or remove with her any important possessions and she had in her possession a return airline ticket to Florida for a flight on November 1, 1997. Since that time Harvey and Miriam have disagreed as to whether Mrs. Jacobs should return to Florida, leading to the filing of this action by Miriam and Harvey's motion to dismiss.
Domicile is in "a strict legal sense... the place where [a person] has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning, and from which he has no present intention of moving." See, Cromwell v. Neeld, 15 N.J.Super. 296, 300, 83 A.2d 337 (App.Div.1951). It is well settled that a domicile may be acquired in one of three ways: (1) through birth or place of origin; (2) through choice by a person capable of choosing a domicile; and (3) through operation of law in the case of a person who lacks capacity to acquire a new domicile by choice. Gillmore, supra, 101 N.J.Super. at 87, 243 A.2d 263. Miriam's chief contention centers on the second method; Miriam claims that while Mrs. Jacobs is in such a mental condition that she will eventually be declared to be an incapacitated person, she may still have the capacity to choose a domicile.
It has been generally expressed by a number of jurisdictionsin a way which merely begs the questionthat one who has been adjudged mentally incapacitated or who has been shown to be mentally deficient at the time of a change in domicile has been alleged to have occurred, may possess sufficient mental capacity to elect a new domicile. See, for example, Restatement, Contracts 2d § 23 ("A person who is mentally deficient may acquire a domicil of choice if he has sufficient mental capacity to choose a home"). See also, In re Sherrill's Estate, 92 Ariz. 39, 373 P.2d 353 (1962); Estate of Phillips, 269 Cal. App.2d 656, 75 Cal.Rptr. 301 (1969); Matthews v. Matthews, 141 So.2d 799 (Fla.App. 1962); In re Estate of Peck, 80 N.M. 290, 454 P.2d 772 (1969), cert. denied 396 U.S. 942, 90 S.Ct. 376, 24 L.Ed.2d 242 (1969); Groseclose v.. Rice, 366 P.2d 465 (Okla.1961); and the cases cited in Annotation, "Change of State or National Domicil of Mental Incompetent", 96 A.L.R.2d 1236 (1964). These authorities, while apparently recognizing a lesser mental capacity for the choosing of a domicile than the ability to care for one's self or property, do not define that capacity or clarify the distinction.
A few older decisions of our courts appear to create a higher obstacle for an effective choice of domicile by an incapacitated person. See, In re Collins', 11 N.J.Misc. 233, 235, 165 A. 285 (Surr.Ct.1932)("An incompetent person is generally assumed in law not capable of forming an `intention' to change domicile"); cf., In re Child, 16 N.J.Eq. 498 (Chan. 1864). A more recent decision which discussed the ability of an incapacitated person to choose a new home found her "so advanced in senility at the time she left her New York home to live in New Jersey that she did not possess the requisite mental capacity to make a new domicile by choice." Gillmore, supra, 101 N.J.Super. at 87, 243 A.2d 263. But that statement could as easily support a conclusion that the level of incapacity which would warrant the appointment of a guardian is the same as the standard necessary to make an effective choice of domicile as not.
It is true that courts should refrain from limiting an incapacitated person's rights whenever possible. Even those who are generally incapacitated vary widely in their degree of alertness and in their ability to communicate. Our Supreme Court has found that a person may be competent to make a medical decision regarding a course of medical treatment even if previously adjudicated in need of a guardian. In re Conroy, 98 N.J. *435 321, 382, 486 A.2d 1209 (1985). Because there are many levels of mental capacities and because the appointment of a guardian is a significant restriction of a person's liberty and pursuit of happiness, the Supreme Court has directed trial courts to "preserve as much as possible their right of self-determination while discharging the judicial responsibility to protect their best interests." In re M.R., 135 N.J. 155, 167, 638 A.2d 1274 (1994). The Court in M.R. said that "someone who is unable to manage his or her own affairs may still be capable of deciding where and with whom to live." 135 N.J. at 169, 638 A.2d 1274. That would appear to resolve the legal issue raised herein except the context in which that comment was made by the Supreme Court is strikingly different. M.R. was a mildly to moderately retarded 21 year old woman with Down's Syndrome. The question in M.R. concerned which divorced parent would be M.R.'s primary caregiver. It is important to observe that the Court's words about M.R.'s ability to choose "where and with whom to live", even if she was in need of a guardian, were directed toward M.R.'s choice between parents residing in the same jurisdiction. Moreover, in that context, the Court recognized that her choice "if proved incorrect, can be corrected". 135 N.J. at 169, 638 A.2d 1274. The Court did not have before it a choice by the incapacitated person to live outside the jurisdiction which might not be so easily correctable for reasons expressed elsewhere in this Opinion.
Our Supreme Court has drawn no bright lines with respect to the scope of autonomy of incapacitated persons; however, in light of Conroy and M.R., the Court would no doubt conclude that those who have been or will be determined to be incapacitated persons may still, upon an appropriate showing of capacity, choose a different state as their own domicile. As with the ability to choose between medical choices or which parent's home to primarily live in, the choice of a "[d]omicile is very much a matter of the mindof intention," Lyon v. Glaser, 60 N.J. 259, 264, 288 A.2d 12 (1972). It is beyond quarrel in the wake of these cases, and particularly M.R., that a person in need of a guardian may nonetheless have the capacity to choose a domicile. Ultimately, with respect to any natural and inalienable right, including the right to choose a home, whether an incapacitated person will be permitted self-determination depends upon the facts presented.
Miriam claims that it is Mrs. Jacobs' desire to remain in New Jersey and to be declared domiciled here. Certainly, if Mrs. Jacobs were a person who has lucid periods and an ability to, at times, think and communicate clearly, her views on that subject would be of interest. The medical evidence presented, however, does not factually support the legal argument Miriam has raised. As required by R. 4:86-2, Miriam appended two medical certifications. The certification of Dr. Joel S. Ross indicates that he found Mrs. Jacobs to have "significant cognitive deficits and memory loss"; he concluded that she is "unfit and unable to govern herself and to manage her affairs and will continue so to be indefinitely." Dr. Isaac J. Dweck stated under oath that he does "not believe [Mrs. Jacobs] is capable of making any financial or medical decisions [and that he does] not believe she is fully capable of comprehending information given to her"; he concluded that Mrs. Jacobs is "unable to make an informed decision." No exception to these sweeping conclusions was suggested by either medical expert. Accordingly, there is no medical evidence to support Miriam's argument that while Mrs. Jacobs may lack the ability to manage and govern her affairs "she can still express her desires on where she wants to live" in a rational or meaningful way Psb at 5.[2] It may be true that a court of competent jurisdiction, upon declaring her to be an incapacitated person, should consider Mrs. Jacobs' desires as to where she wants to live in making such an order as is just and proper. However, in the face of the medical proof submitted, it cannot be said that any expressions of Mrs. Jacobs, whom all interested parties believe to be an incapacitated person,[3] *436 should be equated with the mental process needed to rationally choose a domicile. In short, a court should be open to considering what Judge Carton referred to as an incapacitated person's "glimmerings of rationality," Gillmore, supra, 101 N.J.Super. at 87, 243 A.2d 263, in regard to a choice of residence. But a court should also be quite careful not to base a ruling on such "glimmerings" when the medical evidence eliminates that person's ability to make any informed decision.
Miriam has not urged the third method by which a domicile could be changed: by operation of law. Gillmore sets forth the factors and circumstances which a court will evaluate in determining whether a new domicile has, in fact, been established by operation of law. The question which this court must answer is whether Rose Jacobs established such a "settled connection" with New Jersey since her arrival in October of 1997, that she can be considered to have become domiciled here even if she was personally unable to make that choice. See, Gillmore, supra, 101 N.J.Super. at 87, 243 A.2d 263. Mrs. Jacobs retains and possesses a home in Florida. Her assets and bank accounts are located there, as are members of her family, friends, doctors and health aides. The day care center in which she resided is in Florida, and her personal possessions, such as clothing and jewelry, remain there. Unlike the incapacitated (then, incompetent) person in Gillmore, the ties which Mrs. Jacobs maintains with her Florida domicile remain numerous and strong.
Accordingly, this court finds that Mrs. Jacobs was, in October 1997, and is now, mentally incapable of choosing a new domicile and that the circumstances outlined above do not suggest that her domicile was changed to New Jersey by operation of law.
In the final analysis, it is important to recognize and emphasize that, contrary to what Miriam argues, such a result does not hamper or eliminate the rights of incapacitated persons. It is critical that a court cautiously consider the upshot of a finding of a change in domicile. The record includes an impressive array of proof that Mrs. Jacobs remains domiciled in Florida. For this court to exercise jurisdiction in the face of the likelihood that a Florida court could also properly exercise jurisdiction over Mrs. Jacobs presents the possibility of an unseemly conflict between jurisdictions. For example, compare In re Dorrance's Estate, 115 N.J.Eq. 268, 170 A. 601 (Prerog.Ct.1934), supplemented 116 N.J.Eq. 204, 172 A. 503 (Prerog.Ct.1934), aff'd 13 N.J.Misc. 168, 176 A. 902 (Sup.Ct.1935), aff'd 116 N.J.L. 362, 184 A. 743 (E. & A.1936), cert. denied 298 U.S. 678, 56 S.Ct. 949, 80 L.Ed. 1399 (1936) with In re Dorrance's Estate, 309 Pa. 151, 163 A. 303 (1932), cert. denied 288 U.S. 617, 53 S.Ct. 507, 77 L.Ed. 990 (1933). In the Pennsylvania litigation it was concluded that Dr. Dorrance was domiciled in Radnor, Pennsylvania at the time of his death and was assessed transfer inheritance taxes of nearly $15,000,000; the Supreme Court of the United States denied the Estate's petition for certiorari. In New Jersey, it was determined that the Pennsylvania decision was not binding, that Dr. Dorrance was domiciled in Cinnaminson, New Jersey at the time of his death and that it was proper to assess transfer inheritance taxes in excess of $12,000,000; the Supreme Court of the United States denied the Estate's petition for certiorari. To add insult to this injury, the New Jersey courts denied any deduction to the Estate for the taxes paid to Pennsylvania because the statute authorizing deductions for "transfer taxes paid or payable to other states" must have meant "transfer taxes for which there was a legal liability on the part of the estate, under the laws of this state or binding this state." 116 N.J.Eq. at 207, 172 A. 503. Since our Prerogative Court viewed the Pennsylvania holding that Dr. Dorrance was domiciled in Pennsylvania to be "erroneous and illegal," id. at 206, 172 A. 503, it found that there should be no deduction because the Estate had no legal liability to pay taxes to Pennsylvania. The well-established law that a person can have only one domicile, *437 and that such a tax may only be constitutionally assessed and levied upon by one state, that is, the state where the decedent was domiciled at the time of death, must have provided little comfort to the Dorrance family.
Happily, Harvey has shown restraint and not commenced an action in Florida. Such an event would have presented the potential for a multi-jurisdictional squabble over Mrs. Jacobs, the likely appointment of more than one guardian and a struggle over the future location of her person and the disposition of her property. Since this court will dismiss the present action for lack of jurisdiction, this possibility has been avoided. But, it is important to recognize how a cautious approach to determining the domicile of an alleged incapacitated person is not harmful but beneficial to the rights of such persons who, in their twilight years, need not and should not become a res fought over by warring children and welcoming courts. It is better that courts skeptically view whether a change in the domicile of an incapacitated person has occurred; if too much reliance is placed on the "glimmerings of rationality" of an incapacitated person, then the risk of a multi-jurisdictional dispute and a repeat of Dorrance is enhanced[4]. See also, Texas v. Florida, 306 U.S. 398, 410-411, 59 S.Ct. 563, 83 L.Ed. 817 (1939).
This court will not exercise subject matter jurisdiction over this action and, for that reason only,[5] the complaint will be dismissed.
NOTES
[1] The Legislature recently amended the statutes applicable to such actions so as to replace the references to "incompetents" with "incapacitated persons". At the present, our Court Rules remain unchanged and still use the term "incompetent", so it could be said that at the moment the way in which plaintiff has captioned this matter is not altogether incorrect. In obedience to the Legislature, this opinion will refer to Mrs. Jacobs as an "alleged incapacitated person."
[2] After oral argument, plaintiff's counsel submitted a supplemental brief neither requested nor permitted by the court. Nevertheless, the court has reviewed and considered this supplemental brief as well as defendant's response.
[3] Counsel for Harvey Wartell agrees that Mrs. Jacobs is an incapacitated person as does Mrs. Jacobs, through her court appointed attorney.
[4] Miriam appears to argue that since Mrs. Jacobs is physically present in this State no other court will be able to hold that she is domiciled elsewhere. In other words, Miriam appears to believe that a court in Florida will not be able to obtain jurisdiction to determine whether a guardian should be appointed for Mrs. Jacobs if Mrs. Jacobs is present in New Jersey. That is not an accurate statement. Again, persons who are not capable of choosing a new domicile do not lose their domiciles when crossing state lines. For that matter, neither do persons of sound mind. As Lord Eldon said long ago, "If a man resident in the city of London, were conveyed by force into Essex, he would still for this purpose be resident in the city. A man cannot be said to reside in a place, to which he has been carried, while he has not mind enough to intend a change of residence." Child, supra, 16 N.J.Eq. at 498 (emphasis added).
[5] It was earlier observed that all the litigants to this action, including the court appointed counsel for Mrs. Jacobs, agree that she should be declared "an incapacitated person". Notwithstanding, this court, in light of its lack of jurisdiction, has made no such finding on that issue.